# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00159-CR

**Adolfo Moran, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 9020257, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant guilty of indecency with a child by contact. *See* Tex. Pen. Code Ann. § 21.11 (West 2003). The jury assessed punishment, enhanced by two previous felony convictions, at eighty years' imprisonment. Appellant brings forward one point of error complaining of the denial of a motion for mistrial and twenty-six points of error complaining of ineffective assistance by trial counsel. We will overrule all these points and affirm the conviction.

### *Background*

C.H., the complaining witness, lived with her paternal grandfather and the grandfather's wife, Janie Gonzales, from the time she was eighteen months old until she was twelve years old. Appellant is Gonzales's nephew. The events in question happened when C.H. was aged four and eleven. She was twenty-two at the time of trial.

C.H. testified that when she was four, appellant attended a party at her grandparents' house. She remembered sitting on a couch with appellant. Appellant put her head in his lap, propped her feet on the arm of the couch, and put his finger in her vagina. Later that night, C.H. discovered blood on her panties. Gonzales also saw the blood, and she asked C.H. "if something happened to me." C.H. did not tell Gonzales what appellant had done. Gonzales testified that she remembered the time when C.H. had blood in her panties, but she could not recall whether appellant had been in her house that day.

C.H. testified that appellant visited her grandparents' house again when she was eleven. When he arrived, he hugged C.H. and kissed her on the mouth, trying to use his tongue. Once again, C.H. found herself seated on the couch with appellant. Appellant touched and squeezed C.H.'s breasts. Although C.H.'s grandfather was also in the room, he did not see what appellant was doing, and C.H. did not cry out. C.H. testified that during the months following this incident, appellant returned to the house several times. On each visit, he would attempt to kiss her on the mouth and put his hands in her pants. She said that she finally told appellant that she was going to call the police if he did not stop touching her. Appellant did not return after that. Gonzales testified that she noticed that C.H. did not like appellant to touch her, but she added that C.H. did not like to be touched by anyone.

C.H. ran away from her grandparents when she was twelve and began living with her mother, who had been in prison for most of C.H.'s life up to that time. C.H. soon began to abuse drugs, and she spent time in rehabilitation programs and the custody of the Texas Youth Commission (TYC). She was twenty years old when she first reported appellant's conduct to the police.

2

### *Ineffective Assistance*

In points of error one through twenty-five, appellant urges that his trial counsel was ineffective because he did not make appropriate objections to testimony that appellant contends was inadmissible.[1]  In point of error twenty-six, appellant argues that counsel ineffectively failed to pursue a trial objection to an unfavorable ruling.  We will review these points using the *Strickland* standard: appellant must show that his attorney made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999).  We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  To overcome this presumption, the allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

### *Hearsay/Outcry Testimony*

Appellant cites eighteen instances in which he contends his attorney failed to object to direct or indirect hearsay testimony regarding C.H.'s outcry statements. *See* Tex. R. Evid. 802. He also asserts that the testimony in question was objectionable under article 38.072, which creates a hearsay exception for outcry statements made by victims of child sexual abuse.  Tex. Code Crim. Proc. Ann. art. 38.072 (West 2005).  Appellant complains that article 38.072 was violated because

---

[1] In many of these points, appellant does not specify the testimony to which he refers.  We have analyzed appellant's summary of the trial testimony to identify as best we can the testimony appellant believes was objectionable.

more than one outcry witness was permitted to testify and because the requisite notice and hearing were not provided. *See id*. art. 38.072, § 2.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). A witness need not directly quote an out-of-court statement for the testimony to be hearsay. Testimony that indirectly suggests the content of an out-of-court statement can also be hearsay. *See Burks v. State*, 876 S.W.2d 877, 898 (Tex. Crim. App. 1994) (police officer's testimony describing his actions after speaking to crime witnesses indirectly conveyed content of witnesses' statements to officer); *Schaffer v. State*, 777 S.W.2d 111 (Tex. Crim. App. 1989) (witness's testimony that he had spoken to police officer for whom defendant claimed to have been acting, and that he would not recommend that charges be dropped, indirectly informed jury that officer denied that defendant had been acting as his agent). Whether testimony constitutes implied or indirect hearsay depends on how strongly the content of the out-of-court statement can be inferred from the context. *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). If the inference is clear, and if there is no other purpose for the testimony than to convey the content of the out-of-court statement, the testimony is hearsay. *Id*. at 162-62; *Schaffer*, 777 S.W.2d at 115.

**Outcry to drug counselors.** In points of error one, two, nine, eleven, and twelve, appellant urges that his attorney should have objected to testimony regarding C.H.'s outcry to Linda Silverstein and other drug counselors and their response. C.H. testified that she began her first drug rehabilitation program when she was fourteen. Her testimony continued:

Q: From the time that you started drug treatment, was there ever a point that you told any of your counselors about having been abused?

A: Yes, ma'am.

Q: And did you speak with Linda Silverstein about having been sexually abused?

A: Yes, ma'am. I spoke to most counselors about that.

Q: Did—what did you tell Linda Silverstein?

A: I told her that I had been abused as a child and that nobody ever did anything about it. And I was already 18, and I told her that—I mean, I wanted to do something about it . . . . And so she referred me to SafePlace.

SafePlace is an agency that counsels victims of sexual assault and sexual abuse.

Linda Silverstein testified that she is a substance abuse counselor and that she worked with C.H. for about one year. Silverstein said that C.H. told her that "she had been sexually abused when she was younger." Silverstein encouraged C.H. to go to SafePlace.

We believe that it was within the wide range of reasonable professional assistance for appellant's trial counsel to conclude that this testimony was offered to prove only the fact that C.H. had told Silverstein and other drug counselors that she had been sexually abused and to explain why C.H. went to SafePlace. The testimony did not convey the content of C.H.'s statements to the counselors beyond the mere fact that she had been abused. The testimony did not imply that C.H. told Silverstein or any other drug counselor that appellant had been the abuser, or that she had given the counselors an account of appellant's unlawful conduct similar to her trial testimony. It was also within the range of reasonable professional judgment for counsel to conclude that these vague references to childhood sexual abuse were not sufficiently detailed to constitute outcry within the

5

meaning of article 38.072, and thus to invoke the procedural requirements of that statute. *See Foreman v. State*, 995 S.W.2d 854, 858-59 (Tex. App.—Austin 1999, pet. ref'd).[2]

**Outcry to SafePlace counselors.** In points of error three and thirteen, appellant argues that his attorney should have objected to C.H.'s testimony regarding her outcry to counselors at SafePlace and their response. C.H. testified that she went to SafePlace for counseling. The counselors advised her to call the district attorney's office and make a report. She did so when she was twenty years old.

In the context of this trial, this testimony may imply that C.H. told SafePlace counselors that she had been abused, but it does not suggest the specific content of her statements and lacks the detail required for an article 38.072 outcry statement. Trial counsel could reasonably believe that the testimony was not offered to prove the content of the out-of-court statements.

**District attorney's response.** In point of error eighteen, appellant complains that his counsel did not object to C.H.'s testimony describing the response of the district attorney's office to her report. C.H. testified that when she called the district attorney's office from SafePlace, she was told to speak to a detective. This testimony did not indirectly convey the content of her statements to the district attorney's office or constitute outcry within the meaning of article 38.072,

---

[2] C.H. was eighteen years old when she spoke to Silverstein about her childhood sexual abuse. In fact, C.H. was eighteen or older when she made most of the statements appellant now claims were objectionable under article 38.072. One court of appeals has held that article 38.072 does not apply to outcry statements made by a person eighteen years of age or older, even if they describe acts of sexual abuse that occurred when the speaker was a child. *Harvey v. State*, 123 S.W.3d 623, 629 (Tex. App.—Texarkana 2003, pet. ref'd). This question was not briefed by the parties, and we express no opinion on it.

and her attorney could reasonably conclude that it was offered only to prove how C.H. came to the attention of prosecutors and the police.

**Outcry to TYC employees.** In points of error four and fourteen, appellant contends his attorney should have objected to C.H.'s testimony regarding her outcry to TYC employees and their response. C.H. testified that she was placed in TYC custody when she was seventeen. She said that while there, "I told them [about being molested] and they kept saying that my grandpa should have done something."

Once again, this testimony does not imply the content of the statements beyond the fact that they were about "being molested." A competent attorney could conclude that this testimony did not constitute objectionable hearsay or invoke article 38.072.

**Outcry to Hope Cordova.** In points of error seven, ten, and seventeen, appellant urges that his attorney should have objected to testimony regarding C.H.'s outcry to her mother, Hope Cordova, and Cordova's response. C.H. testified that when she was seventeen and in TYC custody, she called her mother and told her that "I had been molested when I was three or four and that I was molested again when I was 11 by the same person." She added that because it was a telephone call, "I didn't tell her the whole story." Cordova testified that while C.H. was living in TYC, she had a conversation with her daughter "about some events that happened to her involving Adolfo Moran." Cordova said that she advised C.H. "to seek counseling and to perhaps join a support group" for victims of sexual abuse.

This testimony, unlike the testimony previously discussed, did convey at least some of the substance of the out-of-court statement. Moreover, the statement linked appellant to the

specific acts of sexual contact for which he was on trial. It is arguable that a reasonably effective attorney would recognize this testimony as an out-of-court statement offered to prove the truth of the matter asserted and make a hearsay objection. It can also be argued that C.H.'s statement to her mother was outcry within the meaning of article 38.072, and thus objectionable based on the failure to give the required notice and the absence of a reliability determination.

**Outcry to Marco Alvarado.** In points of error five and fifteen, appellant asserts that his attorney was ineffective because he did not object to hearsay testimony regarding C.H.'s outcry to her boyfriend, Marco Alvarado, and his response. C.H. testified that when she was eighteen, she told Alvarado "about what happened." We find no testimony recounting Alvarado's response to this.[3]

In context, this testimony simply proved the fact that C.H. told Alvarado that she had been sexually abused. It did not imply the substance of C.H.'s statement to Alvarado, and a competent attorney could reasonably believe that it was not objectionable as hearsay or outcry.

**Alvarado's statement to Officer Cochran.** In point of error eight, appellant complains of his lawyer's failure to object to the testimony of Austin police officer Patrick Cochran regarding a statement given to him by Alvarado. Cochran was assigned to investigate C.H.'s allegations against appellant. Cochran testified that he took a statement from C.H. and then conducted a follow-up investigation. Cochran was asked if he took a statement from Alvarado in the course of his investigation, and he said that he had. He was asked if the statement was

---

[3] There is evidence that Alvarado gave a statement to a police officer and was present when C.H. spoke to Janie Gonzales about appellant's conduct. This evidence is discussed with respect to points of error six, eight, and sixteen, *infra*.

"consistent with what you had been—what you had learned during the course of your investigation." He said that is was.

This testimony was substantially the same as the testimony at issue in *Head*. In that case, a prosecution for sexual abuse of a child, the investigating officer testified that after he interviewed the child, he took statements from the outcry witness and the child's mother. 4 S.W.3d at 260. He was asked if "the statements they gave to you [were] consistent with the facts related to you by [the child]?" He said they were. *Id*. The court of criminal appeals held that the trial court did not abuse its discretion by admitting this testimony over a hearsay objection. *Id*. at 262-63. The court reasoned that "the disputed testimony revealed only that the three statements related basically the same facts; it did *not* reveal the substance of what those facts were." *Id*. at 262. The court added that the trial court could have reasonably determined that it had not been the State's sole intent to convey the contents of the out-of-court statements. *Id*. In light of *Head*, Cochran's testimony was not objectionable hearsay.

**Outcry to Janie Gonzales.** In points of error six and sixteen, appellant urges that his attorney should have objected to testimony regarding C.H.'s outcry to Janie Gonzales and her response. C.H. testified that she and Alvarado were visiting Gonzales in her home when C.H. first confronted Gonzales with her accusations against appellant. She said she asked Gonzales, "Well, did you know Adolfo touched me?" C.H. testified that Gonzales appeared "shocked and nervous that I had gotten so mad at her." C.H. said Gonzales was surprised because "I had never said anything—ever anything about that to her." C.H. testified that Gonzales initially "indicated" that she did not want C.H. to testify against appellant.

9

Appellant's counsel could reasonably conclude that this testimony was not offered to prove the content of C.H.'s statement to Gonzales, but to prove Gonzales's defensive reaction to the accusation against appellant. On the other hand, it is arguable that a competent attorney would have made a hearsay objection when C.H. testified that she told Gonzales that "Adolfo touched me."

### Opinion and Character

In point of error nineteen, appellant urges that his trial counsel was ineffective because he did not object when Officer Cochran referred to C.H. as a victim. Cochran testified that when he interviewed C.H., her demeanor was "what you would expect from a victim that had been traumatized—." Appellant complains that this was improper opinion testimony, but he offers no discussion, argument, or citation of authority in support of this contention. The record reflects that Cochran had been a detective in the child abuse unit for six years. A reasonably effective attorney could believe that the officer was qualified to make the statement in issue and that an objection would be fruitless. *See* Tex. R. Evid. 701, 702.

In point of error twenty-one, appellant argues that his attorney was ineffective for failing to object when Hope Cordova was asked for her "understanding of the reason why [C.H.] had not reported it." Cordova said, "I think it was pressure from the family, and basically that's it." Once again, appellant's brief contains no argument specifically addressing his contention that this was inadmissible opinion testimony. It was within the range of reasonable professional competence for appellant's counsel to conclude that Cordova's statement was an admissible lay opinion. Tex. R. Evid. 701.

10

In points of error twenty, twenty-two, and twenty-three, appellant argues that his attorney was ineffective because he did not object to Silverstein's opinion testimony concerning C.H.'s self-image and motives, and to Silverstein's testimony attesting to C.H.'s good character. Silverstein was asked her "impression of how [C.H.] viewed" the fact of her childhood sexual abuse. Silverstein answered, "Well, [C.H.] never sees herself really victimized. So I think at first that changed quickly, but at first she kind of blamed her own self, which is normal for a sexual abuse victim. But I also noticed that it changed her relationships with people. . . . She wasn't as trusting or open as she might have been." Silverstein was also asked if she thought C.H. "was out for revenge or out to get somebody in trouble." She said she did not believe this.

Silverstein testified that she had a master's degree in "intervention counseling" and had been working as a substance abuse counselor for over twenty years. She counseled C.H. for approximately one year with respect to her drug abuse. Appellant's lawyer could reasonably believe that an objection was not warranted because the testimony summarized above was admissible as either lay or expert opinion. Tex. R. Evid. 701, 702.

### Other Alleged Errors by Counsel

In points of error twenty-four and twenty-five, appellant urges that his trial counsel was ineffective because he did not properly object to Gonzales's testimony regarding a "family rule" that appellant was not to be left alone with C.H. The prosecutor asked Gonzales if she ever had a rule "about Adolfo not being allowed to be alone with [C.H.]." Gonzales answered, "No." The prosecutor then asked, "Did you ever tell anyone that you knew Adolfo was not—." Appellant's counsel interrupted to object (outside the jury's hearing) that the question violated the court's order

11

instructing the State to obtain a ruling before offering evidence of extraneous misconduct. The court instructed the prosecutor to narrow her question to refer only to C.H. and not to children generally. When the prosecutor attempted to comply with the court's ruling, she twice adduced from the confused Gonzales that she had heard from other members of the family that appellant was "not supposed to be around kids." On both occasions, counsel's objections were sustained and the jury was instructed to disregard, but his motions for mistrial were overruled. The prosecutor tried again: "Did you know that Adolfo was not supposed to be around [C.H.]?" Gonzales answered, "Around [C.H.]. Well, apparently I heard about something. Then I was just—I was there at the time anyway, you know. When he was there, I was there." Appellant argues that his lawyer should have objected to this question and answer as inadmissible hearsay and improper character evidence.

Appellant argues that for Gonzales to have been aware of some family understanding that appellant was not to be left alone with C.H., there must at some time have been a discussion among family members of appellant's conduct with C.H. From this, appellant concludes that this testimony constituted indirect hearsay. But the testimony did not clearly imply the content of any out-of-court statements. Moreover, the State was seeking to prove the existence of the family understanding, not to prove the truth of any out-of-court conversations. *See Head*, 4 S.W.3d at 261-62. A reasonably competent attorney could believe that this testimony was not objectionable as hearsay.

Appellant also argues that this testimony implied that he had committed other acts of misconduct against C.H. and therefore constituted improper extraneous misconduct evidence. Tex. R. Evid. 404(b). Code of criminal procedure article 38.37 provides that in prosecutions for

12

sexual offenses committed against children under seventeen, evidence of other crimes, wrongs, or acts committed by the defendant against the child shall be admitted for its bearing on relevant matters notwithstanding rule 404. Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 2005). Appellant's attorney could reasonably conclude that if Gonzales's testimony constituted evidence that appellant had improperly touched C.H. on other occasions, it was admissible under article 38.37.

In point of error twenty-six, appellant contends that his lawyer was ineffective because he did not preserve error when C.H. testified that appellant had been in prison. C.H. testified that in 2001, she saw appellant for the first time since she was eleven years old. She was asked where she saw him. She answered, "I seen him walk—I was on the bus downtown and I seen him walking across the street. And my grandma had told him [*sic*] he was in prison." Appellant's objection was sustained, and the jury was instructed to disregard C.H.'s statement. Appellant argues that his attorney should have pursued his objection to a negative ruling in order to preserve error. It is reasonable to assume, however, that counsel was of the opinion that the court's instruction to disregard was adequate to cure the error (or would be deemed adequate on appeal), and that a mistrial motion would serve only to draw further attention to the testimony. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (testimony erroneously referring to or implying extraneous offense can be rendered harmless by instruction to disregard).

## *Conclusion*

If appellant's present attorney had represented him at trial, that attorney might have made all the objections he contends should have been made by trial counsel. But the fact that

13

another lawyer would have made different choices does not in itself demonstrate that trial counsel was ineffective. *Passmore v. State*, 617 S.W.2d 682, 686 (Tex. Crim. App. 1981). We do not evaluate the effectiveness of counsel in hindsight, but from counsel's perspective at trial. *Strickland*, 466 U.S. at 689; *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). And we assess the totality of the representation rather than isolated acts or omissions. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986).

We have already concluded that most of the objections appellant urges should have been made were either without merit or of such dubious merit as to justify a reasonably effective attorney's decision not to object. While we have found two instances in which it can be argued that a hearsay objection should have been made, counsel's failure to make the objections does not render the totality of his trial representation ineffective. Furthermore, we are not persuaded that the outcome of the trial would have been different had the objections been made. *See Strickland*, 466 U.S. at 694. Points of error one through twenty-six are overruled.

### *Denial of Mistrial*

In his last point of error, appellant contends the trial court erred by failing to grant a mistrial after Gonzales testified that she had been told by other members of the family that appellant was not supposed to be left alone with children. As we discussed previously, the trial court sustained appellant's objections to this testimony and instructed the jury to disregard. The court did not abuse its discretion by concluding that a mistrial was unnecessary. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Kemp*, 846 S.W.2d at 308. Point of error twenty-seven is overruled.

14

The judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   November 10, 2005

Do Not Publish

15