Jack HEAD, Jr., Appellant,

v.

The STATE of Texas.

No. 0045–99.

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1999.

Don Davidson, Bedford, for appellant.

Helena F. Faulkner, Assist. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for the State.

## O P I N I O N

MEYERS, J., delivered the opinion of the Court in which McCORMICK, P.J., MANSFIELD, KELLER, PRICE, HOLLAND and KEASLER, J.J., joined.

A jury convicted appellant of aggravated sexual assault, indecency with a child by contact and indecency with a child by exposure and sentenced him to a term of life, twenty years and ten years confinement, respectively. The Court of Appeals affirmed appellant's conviction in an unpublished opinion. *Head v. State*, No. 2–96–489–CR, slip op. at 2 (Tex.App.—Fort Worth 1998) (per curiam). We granted appellant's Petition for Discretionary Review in which he raises five separate grounds for review. Grounds one, three, four and five are hereby dismissed as improvidently granted. We review only the limited question of whether the Court of Appeals erred in holding that the testimony of a police investigator, in which he asserted that the statements of two persons he interviewed were "consistent" with the facts related to him by the victim, did not convey the contents of an out-of-court "statement" within the meaning of Texas Rule of Evidence 801(d).[1] We affirm the judgment of the appellate court.

Appellant was accused of sexually assaulting "C.S.", the fourteen year-old daughter of his live-in girlfriend, after it became apparent that C.S. was pregnant with his child. When she discovered she was pregnant, C.S. revealed to her aunt, Janet Smith ("Smith"), that appellant's sexual abuse had been ongoing since she was five years-old. C.S. told Smith that appellant began to regularly "touch" her shortly after he moved in with C.S.'s mother in 1984. C.S. also confided in Smith that appellant began having sexual intercourse with her when she was in the third grade.

As a result of C.S.' s outcry, the case was referred to Mark Peterson ("Peterson"), a criminal investigator for the Jack and Wise Counties' District Attorney's Office. Peterson conducted the initial inves-

---

1. At trial, appellant was subject to the Texas Rules of Criminal Evidence, which were subsequently combined with the Texas Rules of Civil Evidence in March, 1998. The resulting Texas Rules of Evidence made no substantive changes to the relevant hearsay provisions under the old criminal rules. Indeed, both the appellant and the State cite the Texas Rules of Evidence in support of their hearsay arguments. We will continue this convention and cite to the current rules in our own discussion.

tigation of the allegations, which included taking written statements from C.S., her mother and Smith.

The case ultimately proceeded to trial. The State called three witnesses as part of its case-in-chief—Smith, Peterson and the victim. Smith, the outcry witness, testified first. She spoke generally about the family's circumstances and about how she came to find out about C.S.'s pregnancy. She then testified about the encounter in which she pressed C.S. to reveal the name of her baby's father:

A. [SMITH] I asked her a couple of times who was responsible, and she said— the first thing she said was, "I don't know." The second thing that happened, she started crying. And I told her that she didn't have to be scared and no one would hurt her, that she could tell me, that it was okay. And she told me at that time that Jack Head was the person responsible.

I asked her— I said, "Did this just happen one time?" And she said no. And I said, "Well, when did this start happening?"

And she said, "Well, when I was real small."

And I said, "How old were you? Can you remember back?"

And she said, "Yes, I was about five years old." He'd started touching her.

And I said, "How long did this go on?"

And she said until she was in the third grade. When she was in the third grade, he started having sex with her. And I said, "Where was your mother?"

And she said, "My mother was working at night at that time." And she said it happened after school and at night while her mother was at work, what she told me.

Q. [PROSECUTOR] Did she tell you how often it happened?

A. [SMITH] No.

Q. [PROSECUTOR] Did she say how long it went on, what period of time?

A. [SMITH] No. She only told me those two things. And then I asked her when she lived with Jack, her and the children, did it happen then, and she said yes. This was when she was 13 or 14 years old.

Peterson was the State's next witness. He testified on direct examination about the course of his investigation. Specifically, he indicated that after he interviewed C.S. he took written statements from both Smith and C.S.'s mother. The following exchange, which is the subject of appellant's complaint, then took place:

Q. [PROSECUTOR] Were the statements [Smith and C.S.'s mother] gave consistent with —

[DEFENSE COUNSEL]: Objection, Your Honor. Calls for hearsay.

THE COURT: Overruled.

Q. [PROSECUTOR] Were the statements they gave to you consistent with the facts related to you by [C.S.]?

A. [PETERSON] Yes.

In the Court of Appeals, appellant claimed the trial court erred by not sustaining his hearsay objection. Appellant asserted that given the state of the evidence before the jury, presumably including Smith's previous testimony, Peterson's answer that each of the three statements were "consistent" effectively communicated the substance of the statements to the jury. The appellate court disagreed and overruled appellant's point of error, holding: "Peterson's answer, 'Yes' did not convey the contents of any statement made by the aunt or the mother to Peterson. There simply was no statement offered for the truth of the matter asserted. Therefore, Peterson's answer did not fall in the prohibited category of hearsay." *Head,* slip op. at 5. Because it concluded that no out-of-court statement was presented by Peterson's testimony, the Court of Appeals opined that no hearsay problem existed. *Id.*

"Hearsay" is a statement, other than one made by the declarant while testifying

at trial, offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). The Rules define "statement" as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by him as a substitute for verbal expression." Tex.R. Evid. 801(a). The question presented here, then, is whether Peterson's testimony that the statements of Smith and C.S.'s mother were "consistent" with the facts as related by C.S., revealed a "statement" within the scope of Rule 801(d).

■ It is well settled that an out-of-court "statement" need not be directly quoted in order to run afoul of the hearsay rules. See Schaffer v. State, 777 S.W.2d 111, 114 (Tex.Crim.App.1989); 2 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 801.2 (2d ed.1993). In Schaffer this Court held that the scope of Rule 801(a) necessarily included evidence offered to prove statements made outside the courtroom. Schaffer, 777 S.W.2d at 113–14. There, the appellant, charged with possession of a controlled substance, claimed to have been acting as a police informer for an officer named Jimmy Seals. Id. at 112–13. In rebuttal, the State called a narcotics investigator to the stand who testified that he had talked to Seals about the appellant's testimony. Id. at 113. The State then asked the investigator whether, as a result of his conversation with Seals, he would ask the State to drop the charges against the appellant. Id. The investigator responded, "No, sir." Id. The State argued that since no out-of-court "statement" was received into evidence, no hearsay problem existed. Id. This Court disagreed, concluding that the State was, in essence, attempting to do indirectly what it could not do directly—that is, have the investigator inform the jury that Seals told him that the appellant was not an informant. Id. at 114. The Court therefore held:

> [W]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. In short, "statement" as defined in [Rule 801(a)] necessarily includes proof of the statement whether the proof is direct or indirect.

Id. Because the "sole intent" of the investigator's testimony was to convey to the jury that Seals had told him that the appellant was not an informant, the investigator's "No" answer was hearsay despite the fact that he did not directly quote Seals' out-of-court statements. Id.

■ Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context.[2] Or, in the parlance of

---

2. This type of indirect or "back door" hearsay problem is analogous to the area of hearsay law involving inferences drawn from conduct. In those cases, an officer typically testifies about actions he took after speaking to a witness. Although the officer does not actually testify as to what he was told by the witness, the officer's subsequent conduct may produce a strong enough inference as to the substance of the statement to present a hearsay problem. The Texas case of Burks v. State, 876 S.W.2d 877, 898 (Tex.Crim.App. 1994), illustrates this dilemma. There, the officer testified that he spoke to the victim and an eye-witness to the crime. Id. The State then asked: "After talking to [the victim], and please let me remind you not to tell me what if anything [he] told you, did you go searching or looking for a particular description of an individual?" Id. The officer responded in the affirmative, indicating that he began looking for "[a] black male, somewhat smaller build than [the victim], having in his possession a black ski mask or toboggan type." Id. The officer responded in a similar manner when asked about the type of individual he began to look for after interviewing the eye-witness. Id. The inescapable inference from the officer's testimony was that the victim and eye-witness had told him the description that the officer had related to the jury. This Court therefore held that the officer's testimony was inadmissible hearsay. Id; see also United States v. Check, 582 F.2d 668, 678 (2d Cir.1978) (detective's testimony about

*Schaffer*, the question is whether the strength of the inference produces an "inescapable conclusion" that the evidence is being offered to prove the substance of an out-of-court statement.[3] *Schaffer*, 777 S.W.2d at 114. In the instant case, we cannot say that the trial court abused its discretion in allowing the jury to hear the disputed testimony.[4] The trial court could have reasonably concluded that Peterson's testimony, when taken in context, did not lead to any inescapable conclusions as to the substance of the out-of-court statements. Specifically, the disputed testimony revealed only that the three statements related basically the same facts; it did *not* reveal the substance of what those facts were. Neither did any other evidence, at that point in the trial, indicate the contents of any of the three statements, what facts the statements had in common, or how any of the facts were consistent. At best, at the time the trial court ruled on the admissibility of the testimony, the jury may have

been able to deduce what C.S. had told Peterson by referencing what she had told Smith.[5] The trial court could have reasonably determined that this sort of inferential leap did not provide the requisite degree of certainty "that the State's *sole intent* in pursuing this line of questioning was to convey to the jury" the contents of the out-of-court statements. *Id.* (emphasis added).

In *Schaffer* the officers' testimony clearly and "inescapably" related the content of the out-of-court statement in an indirect manner. *Id.* The State's question and the officer's answer left little doubt that the true intentions of the State were to inform the jury of the contents of the statements without calling the declarant as a witness. Thus there was a clear hearsay problem. In the case at bar, however, appellant asks us to reverse the trial court's evidentiary ruling in far more ambiguous circumstances. Although these facts present a close case, it was within the trial court's

what he told informant served as "transparent conduit for the introduction of inadmissible hearsay information"); *Commonwealth v. Farris*, 251 Pa.Super. 277, 380 A.2d 486, 488 (1977) (indicating there was "little doubt" that jury took detective's testimony that he arrested defendant after he interviewed witness to mean that witness implicated defendant).

3. The phrase "inescapable conclusion" is not a talisman. Rather, it provides a useful shorthand for quantifying the strength of the inference necessary to impute an improper purpose to the evidence. In other words, the focus of the inquiry should remain on the whether or not the disputed testimony is being offered to *prove* an out-of-court statement. Oftentimes, as in the instant case, the record will not reveal the purpose for which the testimony is being offered. *Schaffer's* language is therefore helpful in evaluating whether the intent of the examiner was to circumvent the hearsay rule. We do not mean to suggest that the *Schaffer* rule should not apply when a conclusion is less than "inescapable" where such an illicit purpose is otherwise shown.

4. Neither the definitions included in Rule 801 nor the *Schaffer* test provide a formula that yields easy answers to all situations that pro-

duce questions of "back door" hearsay. An analysis of whether an impermissible inference is so overriding as to fall within the prohibition of the hearsay rules will necessarily turn on the specific factual circumstances of a given case. In this regard, our review of the trial court's decision to allow the disputed testimony is tempered by the general rule that a trial judge's evidentiary ruling on a hearsay objection will be upheld absent an "abuse of discretion." *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994) (citing *Montgomery v. State*, 810 S.W.2d 372, 390–93 (Tex.Crim. App.1991) (opinion on reh'g)). "That is to say, as long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court will not intercede." *Montgomery*, 810 S.W.2d at 391.

5. Appellant argues that we may reference C.S.'s subsequent testimony, and the resulting introduction of her statement to Peterson under Rule 801(e)(1)(B), in determining whether the jury was presented with the content of the three out-of-court statements. Appellant's Brief at 23. As a practical matter, however, the reviewing court should limit itself to the state of the evidence at the time the trial court was called upon to make a ruling on admissibility. The trial judge cannot be asked to speculate on what evidence will be introduced later when determining whether the context supports a hearsay objection.

discretion to conclude that the testimony did not reveal to the jury the substance of the out-of-court statements, but rather only conveyed that the facts themselves were uniform. We hold that, under the facts of this case, the trial court's decision to allow Peterson's testimony that the various statements were "consistent" was not an abuse of discretion. The trial court's ruling that the testimony did not fall within the scope of Rule 801(d) was "within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. The Court of Appeals did not err in upholding the ruling of the trial court. We therefore affirm the judgment of the appellate court.

WOMACK, J., delivered a concurring opinion.

JOHNSON, J., delivered a dissenting opinion.

WOMACK, J., filed a concurring opinion.

I concur in the judgment of the Court.

I would like to make the testimony clear. The first witness was the victim's aunt, Ms. Smith, who testified about the victim's "outcry" statement to her, *see* Code of Criminal Procedure art. 38.072. She also testified that she had made a handwritten statement to the investigating officer, Mr. Peterson, but she did not say what was in it.

Mr. Peterson testified about the steps in his investigation. He got a report from Child Protective Services and was contacted by Ms. Smith. Evidently he learned that the fourteen year-old victim was pregnant and had named the appellant as the father. He met the appellant at his place of work, and the appellant denied being the father. Then he met with the victim, her mother, and Ms. Smith. He interviewed the victim and, at her request, wrote a statement which she signed. He interviewed Ms. Smith and the victim's mother, who each wrote a statement. *There was no testimony about the contents of the oral or written statements of these three persons.* (Ms. Smith had testified earlier that she gave a statement to Mr. Peterson, but its contents were not revealed.)

Next came the question that is at issue:

Q. Were the statements they [Ms. Smith and the victim's mother] gave consistent with C

[Defense]: Objection, Your Honor. Calls for hearsay.

THE COURT: Overruled.

Q. Were the statements they gave to you consistent with the facts related to you by [the victim]?

A. Yes.

A week later Mr. Peterson got some telephone bills from Ms. Smith. After the baby was born, he got blood samples from the victim and the baby. Then he got a blood sample from the appellant. He transferred the blood to a DNA testing facility. Then he transferred the case to the Fort Worth police. (The assault that left the victim pregnant was committed in another county a number of years after the assault that was on trial. At trial the defense admitted the appellant committed the later assault.)

The appellant and the dissent argue that the evidence permitted an inference that the out-of-court statements were consistent with testimony of another witness.[1] It is clear to the dissenter that Mr. Peterson's testimony *"was offered 'solely' for purposes of corroborating both Smith's earlier testimony and [the victim's] subsequent testimony,"* and that the Court "does not explain what other possible reason there could have been." *Post* at 265–66. That purpose was not apparent to the court of appeals, and it is not readily ap-

---

1. The appellant and the dissent disagree about which witness's testimony was consistent with the out-of-court statements. The appellant says, Brief at 24, it was "the testi- mony of the victim," who had not testified at that point in the trial. The dissent says, *post* at 265, it was the testimony of Ms. Smith, who had testified.

parent to me. The evidence was ill-designed to corroborate their testimony, since it did not mention it. Mr. Peterson's testimony was a step-by-step review of his investigation. In that context, it seems to me that the evidence was offered to prove that there were no inconsistencies at that time in the investigation which would have called for him to take other investigatory steps. The evidence was that the three persons had given consistent statements, but there was no evidence of the contents of those statements.

The Court upholds the trial court's ruling to admit this evidence because "[t]he trial court could have reasonably concluded that Peterson's testimony, when taken in context, did not lead to any inescapable conclusions as to the substance of the out-of-court statements." *Ante* at 262. I do not agree that we should ask whether it is an "inescapable conclusion" that evidence is intended to be hearsay.

The words "inescapable conclusion" were used in our opinion in *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex.Cr.App. 1989), in this context:

> The rule concerning the type of hearsay in this case is set out in *McCormick on Evidence* :
>
> "If the purpose of the testimony is to use an out-of-court statement to evidence the truth of facts stated therein, the hearsay objection cannot be obviated by eliciting the purport of the statement in indirect form. Thus evidence as to the purport of 'information received' by the witness, or testimony of the results of investigations made by other persons, offered as proof of the facts asserted out of court, are properly classed as hearsay." *McCormick on Evidence,* Section 249, p. 735 (Cleary Rev., 3rd Ed.1984).

Thus, where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. In short, "statement" as defined in Tex.R.Civ. Evid. 801(a) (now see Tex.R.Crim.Evid. 801(a)) necessarily includes proof of the statement whether the proof is direct or indirect.

"Inescapable conclusion" formed no part of the rule; the rule turns on the purpose of the testimony C whether it is being offered as indirect proof of the truth of an out-of-court statement. And we did not say the rule applies *only* where there is an inescapable conclusion of the statement's purpose. Our statement was literally correct; the rule applies where there is an inescapable conclusion of the purpose. But it may also apply when the conclusion is less than inescapable. Indeed when we decided the case we asked what was the purpose of the evidence, not whether that purpose was an inescapable conclusion: "In the case at bar, however, the State introduced Segovia's testimony for no other reason than to inferentially prove Seals told Segovia that appellant was not an informer. Seal's out-of-court, implied statement was offered for its truth and was therefore hearsay." *Schaffer v. State,* 777 S.W.2d at 115. We have never cited *Schaffer* as establishing a standard of "inescapable conclusion" in deciding whether testimony is indirect hearsay. I would not do so today.

JOHNSON, J., filed a dissenting opinion.

I respectfully dissent. Appellant was prosecuted for aggravated assault and indecency with a child. At trial, the state first called Janet Smith, the outcry witness, to testify. Smith testified concerning her encounter with the complainant, C.S., in which C.S. told her about the alleged abuse by appellant. The state's next witness, Mark Peterson, testified that the statements given to him by Smith and C.S.'s mother were "consistent with" the facts given to him by C.S. *Ante*, at 260–61. Appellant objected to this on the basis of

hearsay, and the trial court overruled his objection.

On appeal, the Court of Appeals overruled appellant's point of error on this issue. It stated: "Peterson's answer, 'Yes,' did not convey the contents of any statement made by the aunt [Smith] or the mother to Peterson. There simply was no statement offered for the truth of the matter asserted." *Head v. State*, No. 2–96–489–CR, slip op. at 5 (Tex.App.—Fort Worth, October 8, 1998) (not designated for publication).

This holding by the Court of Appeals is incorrect. Smith first testified to certain events, and Peterson then testified that the events as described to him by C.S. were "consistent with" what Smith and C.S.'s mother had told him. Since Smith herself had already testified as to those same events, Peterson effectively testified to the content of what C.S., her mother and Smith had said to him. While all of these statements were inadmissible hearsay, the most egregious of these is the testimony concerning C.S.'s mother; she was not the outcry witness and did not testify, so Peterson effectively testified as to the inadmissible statements of a non-testifying informant. This is precisely the type of indirect hearsay that we held to be error in *Schaffer v. State*, 777 S.W.2d 111, 113–114 (Tex.Crim.App.1989); *see also Burks v. State*, 876 S.W.2d 877, 897–898 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Gochicoa v. Johnson*, 118 F.3d 440, 445–446 (5th Cir.1997), *cert. denied*, 522 U.S. 1121, 118 S.Ct. 1063, 140 L.Ed.2d 124 (1998). The judgment of the Court of Appeals should be reversed, and the cause remanded for a harm analysis.

The majority's assertion that "Peterson's testimony, when taken in context, does not lead to any inescapable conclusions as to the substance of the out-of-court statements" (*ante*, at 261–62) does not withstand scrutiny. The majority attempts to distinguish the instant case from *Schaffer* by characterizing the indirect

hearsay in *Schaffer* as "inescapably" relating the contents of the out-of-court statements (*ante*, at 262); it contends that, in contrast, the testimony in the instant case requires "deduction" and an "inferential leap" from the jury in order to constitute hearsay. *Id.* That is the very point of indirect hearsay; because it is indirect, some type of deduction or inference must always be made.

This attempt to distinguish *Schaffer* and the instant case is all the more puzzling because the testimony in *Schaffer* required more of an "inferential leap" than does the testimony in the instant case. In *Schaffer*, the defendant was charged with possession of a controlled substance. *Schaffer*, 777 S.W.2d at 112. He claimed that he had been acting as an informant to an Officer Seals. *Id.* at 112–113. A narcotics investigator testified that he had spoken with Seals and when asked whether he would ask the state to drop the charges against appellant as a result of his discussion with Seals, he said "no." *Id.* at 113. In an opinion by Presiding Judge McCormick, we held that this was hearsay. *Id.* at 113–114. Certainly, an inference or "leap" had to be made in *Schaffer*: Seals must have told the witness that the defendant was not an informant. By contrast, in this case, it takes only a small step to figure out that Smith's previous testimony, as well as C.S.'s subsequent testimony, were essentially the same as what C.S., her mother and Smith had told Peterson.

The majority also focuses on the phrase "sole intent" in *Schaffer* to suggest that the sole intent in the instant case was not to elicit hearsay testimony. *Ante*, at 262. Yet, the majority does not explain what other possible reason there could have been for eliciting this testimony. Clearly, it *was* offered "solely" for purposes of corroborating both Smith's earlier testimony and C.S.'s subsequent testimony. It was elicited in order to prove the truth of the matter asserted by the other witnesses and a non-witness, and this makes it hearsay. As we stated in *Schaffer*, "To regard

the testimony in any other manner is disingenuous...." *Schaffer,* 777 S.W.2d at 114.

Finally, the majority attempts to justify its conclusion by asserting that this was a "close" case and that, as such, the trial court did not abuse its discretion. *Ante,* at 262–63. As noted above, this indirect hearsay is even clearer than the indirect hearsay in *Schaffer.* If it was error to admit the testimony in *Schaffer,* then surely it was error to admit it in this case.

Forty years ago, Judson F. Falknor, Professor of Law at the University of California, Berkeley, and the New York University School of Law, wrote about indirect hearsay,

> While the objectionable character of ["indirect" hearsay] evidence seems obvious enough, it will be observed ... how frequently the hearsay objection has been brushed aside in the trial courts, and, also how the appellate courts, not infrequently, have fumbled what seems to be a relatively simple problem of evidence law.

Judson F. Falknor, *"Indirect" Hearsay,* 31 TULANE LAW REVIEW 3, 3 (1956). In my own experience, hearsay is a difficult concept for many persons and indirect hearsay even more so. I see no reason to make the concept even more difficult by reaching a decision which is irreconcilable with *Schaffer.* Our case law will now give contradicting guidance to lower courts in analyzing this type of hearsay. Such confusion need not be introduced into our jurisprudence. I dissent.[1]

---

1. The majority dismisses, without explanation, four of appellant's grounds for review. *Ante,* at 259. In his petition for discretionary review, appellant presented five grounds for review. The list of granted petitions for discretionary review for April 14, 1999, erroneously indicated that we had granted all grounds in appellant's petition. A check of the relevant paperwork indicates that we granted only ground two, the indirect hearsay issue.