Opinion issued February 16, 2006














In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00394-CR




JAMES MCCREARY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 978804




O P I N I O NA jury found appellant, James McCreary, Jr., guilty of aggravated robbery and
assessed punishment at 10 years. On appeal, appellant contends that (1) the trial court
erred in allowing a detective to testify to certain statements amounting to “backdoor
hearsay”; (2) the admission of the backdoor hearsay statements violated the
Confrontation Clause of the Sixth Amendment; and (3) the trial court erred in
allowing the State to question him about his post-arrest silence. We affirm. 
BACKGROUND
          On January 18, 2004, two men walked into a Papa John’s pizza restaurant. The
older of the two ordered a pizza under the name “Black.” He then pulled out a
handgun and forced the manager on duty, Jennifer Lee, to go into the back room
where the money was kept. The duo followed her into the back room, took the money
(about $1,200), and fled. Detective Robert Shoeby questioned Lee and his
investigation led him to a local high school where he obtained a photograph of one
of the suspects, Troy Brooks. Lee identified Brooks as one of the suspects, and
Shoeby’s interview with him led Shoeby to appellant. Shoeby then obtained a
photograph of appellant and showed it to Lee, who identified appellant as one of the
men who had ordered her at gunpoint to retrieve the money.
          At trial, the State questioned Shoeby as to how his investigation led him to
appellant:
Q: Okay. So, did you to speak to [Troy Brooks] on
February 11th of 2004?
 
A: Yes, ma’am.
 
Q: At the high school?
 
A: Yes, ma’am.
 
Q: Now, after you spoke with Mr. Brooks, did you
continue your investigation in searching for the second
suspect in this case?
 
A: Yes, ma’am.
 
Q: And at that point, who were you looking for?
 
DEFENSE COUNSEL: Your honor, at this point I’d object
to backdoor hearsay.
 
COURT: Overruled.
 
A: At this point I was looking for an individual by the
name of Black [appellant’s nickname].

Appellant also took the stand at trial. He testified on direct examination as follows: 
Q: So, after you moved, did—were you ever contacted
personally by the police regarding [the aggravated
robbery]?
 
A: No, ma’am.
 
Q: Okay. Were you contacted by the police regarding any
other—let me takethat back. Were you contacted by the police
regarding a hit-and-run?
 
A. Yes, ma’am.

          * * *
 
Q: Do you recall—were you asked to go to a police station?
 
A: Yes, ma’am.
 
Q: And did you comply with that?
 
A: Yes, ma’am.
 
Q: And when you went to the police station, what did they do?
 
A: Took me in a room and asked me about a hit-and-run on
Cypress Station.
 
Q: Okay. And do you recall the date that you went there?
 
A: No, ma’am.
 
Q: Were you able to leave?
 
A: Yes, ma’am.
 
Q: Okay. Did they ask you any questions about the aggravated
robbery?
 
A: No, ma’am.

          Before the State commenced cross-examination, the prosecutor argued outside
the presence of the jury that appellant’s testimony had created the misleading
impression with the jury that during the police investigation appellant had never been
allowed to present his version of the events. The prosecutor stated that after appellant
was arrested on March 20, Shoeby had given him an opportunity to talk about the
robbery, and appellant stated that he would not talk until he had consulted with an
attorney. Appellant objected to any questions about his post-arrest silence. The trial
court agreed to let the State ask appellant questions related to appellant’s invocation
of his right to remain silent. The State then questioned appellant.
Q: Okay. Now you were arrested for this offense on March
20th, right?
 
A: Yes, ma’am.
 
Q: And do you remember Detective Shoeby who testified just
yesterday, the gentleman with the mustache, blond hair? The
officer who testified here yesterday.
 
A: I think that was one [sic] that took me downstairs and
interviewed me.
 
Q: All I’m asking is do you remember the gentlemen—yeah, who
testified yesterday?
 
A: Not right offhand. I remember who testified yesterday, but I
don’t remember talking to him. No, ma’am.
 
Q: Okay. So, you—but do you remember a detective—and would
it be Detective Shoeby—who tried to talk to you and give you an
opportunity to tell—to tell them what you knew about an
aggravated robbery, if anything?
 
A: Yes, ma’am.
 
* * *
 
Q: And you didn’t talk to him, did you?
 
A. No, ma’am.
 
Q: Okay. So, on the day of your arrest, your story is you know
that you were somewhere else on January 18th, 2004—

                    A: Yes, ma’am.

                    Q: —right? But you chose not to share that with anybody?

                    A: Yes, ma’am.

          On redirect examination, appellant’s trial counsel asked him about the
conversation with Shoeby. The State then recalled Shoeby to the stand in rebuttal to
testify that appellant had declined to talk with him regarding the robbery until he had
consulted with a lawyer. 
DISCUSSION
Backdoor Hearsay
          Appellant first contends that the admission of Detective Shoeby’s testimony
concerning his interview with Troy Brooks constituted backdoor hearsay and, further,
violated the Confrontation Clause of the Sixth Amendment. We review a trial court’s
decision to admit evidence under an abuse of discretion standard. Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court’s ruling
unless that ruling falls outside the zone of reasonable disagreement. Burden v. State,
55 S.W.3d 608, 615 (Tex. Crim. App. 2001). 
          Appellant relies on Schaffer v. State and Head v. State for the proposition that
the questioning of Shoeby constituted backdoor hearsay. That is, the State was
attempting to get before the jury the contents of Brooks’s statement—that appellant
robbed the restaurant with him—via Shoeby’s testimony. Schaffer held that “where
there is an inescapable conclusion that a piece of evidence is being offered to prove
statements made outside the courtroom, a party may not circumvent the hearsay
prohibition through artful questioning designed to elicit hearsay indirectly.” 777
S.W.2d 111, 114 (Tex. Crim. App. 1989) (noting that the phrase “inescapable
conclusion is not a talisman . . . [but that] the focus of the inquiry should remain
whether or not the disputed testimony is being offered to prove the out-of-court
statement.”). 
          Ten years later, in Head v. State, the Court of Criminal Appeals reaffirmed the
holding in Schaffer, but distinguished it under the facts before them. 4 S.W.3d 258,
262-63 (Tex. Crim. App. 1999). In Head, the defendant was accused of sexually
assaulting the fourteen year-old daughter of his live-in girlfriend. Id. at 259. After
revealing defendant’s behavior to her aunt, the daughter spoke with an investigator
from the district attorney’s office, Mark Peterson. Id. 259-60. At trial, the State called
the victim, the victim’s aunt, and Peterson to testify, in that order. Peterson testified
as follows:
Q: Were the statements [the victim’s aunt and the victim’s mother] gave
consistent with—

          DEFENSE COUNSEL: Objection, Your Honor. Calls for hearsay.

          THE COURT: Overruled.
 
Q: Were the statements they gave to you consistent with the facts with
                     the facts related to you by [the victim]?

          A: Yes
Id. at 260.
          The Head Court held that this exchange did not constitute backdoor hearsay
because the testimony did not produce “an ‘inescapable conclusion’ that the evidence
[was] being offered to prove the substance of an out-of-court statement.” Id, 4
S.W.3d at 262 (quoting Schaffer, 777 S.W.2d at 114). Instead, “the disputed
testimony revealed only that the three statements related basically the same facts.” Id.
          Burks v. State, cited by the Head Court, provides a useful discussion of the
problem as applied to our present facts. In that case the Court of Criminal Appeals
discussed the “area of hearsay law involving inferences drawn from conduct.” Id. at
261 n.2. The Head Court explained:
Although the officer does not actually testify as to what he was told by
the witness, the officer’s subsequent conduct may produce a strong
enough inference as to the substance of the statement to present a
hearsay problem. The Texas case of Burks v. State, 876 S.W.2d 877,
898 (Tex. Crim. App. 1994), illustrates this dilemma. There, the officer
testified that he spoke to the victim and an eye-witness to the crime. 
The State then asked: “After talking to [the victim], and please let me
remind you not to tell me what if anything [he] told you, did you go
searching or looking for a particular description of an individual?” The
officer responded in the affirmative, indicating that he began looking for
“[a] black male, somewhat smaller build than [the victim], having in his
possession a black ski mask or toboggan type.” The officer responded
in a similar manner when asked about the type of individual he began to
look for after interviewing the eye-witness. The inescapable inference
from the officer's testimony was that the victim and eye-witness had told
him the description that the officer had related to the jury. This Court
therefore held that the officer's testimony was inadmissible hearsay. 

Id. (internal citations omitted). Here, we can see that the Court of Criminal Appeals 
was clearly worried that the prosecutor’s questioning allowed the victim to testify as
to a very specific description via the officer’s testimony, thereby creating a backdoor
hearsay problem. The State argues that Jones v. State, 843 S.W.2d 487, 499 (Tex.
Crim. App. 1992) (overruled on other grounds) and Dinkins v. State, 894 S.W.2d 330,
347 (Tex. Crim. App. 1995) are dispositive to the resolution of this issue. In Jones,
the court stated:
At the guilt/innocence phase of the trial the arresting officer testified
that after listening to another detective question Yelena Comalander he
began to suspect appellant in this offense, and that he then had an arrest
warrant issue for appellant. The State argues that this testimony is not
hearsay because it was not introduced for the truth of the matter
asserted, but to explain how the officer came to suspect appellant, seek
an arrest warrant for him, and then arrest him.
 
Because the statement was not offered to prove the truth of the matter
asserted, but to show why the officer got an arrest warrant for and
arrested appellant it was not objectionable as hearsay. 

843 S.W.2d at 499. The Dinkins Court reaffirmed Jones and held that an appointment
book and an application form with the defendant’s name in it were admitted to show
how the defendant became a suspect, not for the truth of the matter asserted. Dinkins,
894 S.W.2d at 347.
          We believe the disputed testimony in this case comes closer to Head, Jones,
and Dinkins than Schaffer and Burks. The major problem in Schaffer and Burks was
that the prosecutor’s questioning left the jury with the “inescapable conclusion” that
the someone other than the declarant was testifying through the witness on the stand. 
 See Schaffer, 777 S.W.2d at 114. This is not the case under our facts. Our facts fit
snugly under the exception the Court of Criminal Appeals has created for testimony
such as that here: that Shoeby’s testimony was offered to show how appellant became
a suspect and did not leave the jury with the inescapable conclusion that Brooks was
testifying through Shoeby. See Jones, 843 S.W.2d at 499; Dinkins, 894 S.W.2d at
347. Therefore, we hold that Shoeby’s testimony was admissible to show why his
investigation led him to appellant. Accordingly, appellant’s first point of error is
overruled. 
Confrontation Clause
          Appellant’s second point of error is that because Brooks “testified” through
Shoeby, appellant should have been allowed to question Brooks, and, because he was
not, his constitutional right to confront witnesses against him was violated. See U.S.
Const. amend. VI. However, this point of error necessarily assumes a positive (for
appellant) resolution of the backdoor hearsay issue. That is to say, to find a
Confrontation Clause violation occasioned by appellant’s inability to question
Brooks, we would first have to find a hearsay problem with Shoeby’s testimony. We
do not. Therefore, appellant’s second point of error is rendered moot and is
overruled.
Post-Arrest Silence
          Appellant’s final point of error is that the trial court erred in allowing the State
to question him regarding his post-arrest silence. The United States Supreme Court
has held that the Fourteenth Amendment’s Due Process Clause is violated when a 
defendant’s post-arrest silence, at the time of the arrest and after being given Miranda
warnings, is used by the State for purposes of impeachment. Doyle v. Ohio, 426 U.S.
610, 618–620, 96 S. Ct. 2240, 2245–46 (1976).
          The State argues that the exception to the general rule delineated above applies
here: that appellant developed a position during his direct examination that was
actually inconsistent with circumstances surrounding his questioning by police,
thereby making impeachment of appellant permissible. See Sanchez v. State, 707
S.W.2d 575, 582 (Tex. Crim. App. 1986) (holding that “[a]bsent a showing of actual
inconsistency, post-arrest silence is not probative as evidence of prior inconsistent
conduct; therefore, impeachment through the use of such evidence is improper.”);
Turner v. State, 719 S.W.2d 190, 193 (Tex. Crim. App. 1986) (holding that post-arrest silence cannot be considered inconsistent with defensive matters at trial absent
a showing of actual inconsistency).
          The State offers Lum v. State as an example of when the exception applies;
there, the defendant took the stand and testified on direct examination that none of
the investigating police officers had “let him tell his side of the story.” 903 S.W.2d
365, 369 (Tex. App.—Texarkana 1995, pet. ref’d). Therefore, according to the
State’s analysis, this is analogous to appellant’s statement that the “officers never
contacted him about aggravated robbery” because this gave the jury the impression
appellant never got to tell his side of the story. 
          We agree. Here, appellant’s testimony that the police contacted him but did not
ask him about the robbery could have created the false impression that the police
prevented him from telling his side of the story. Thus, testimony that he was, in fact,
given the opportunity to tell his side of the story was admissible to correct the
misleading impression. See Lum, 903 S.W.2d at 369. 
CONCLUSION
          We affirm the judgment of the trial court.

                                                                                  Sam Nuchia
                                                                                  Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.