**Affirmed and Memorandum Opinion filed May 14, 2019.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-18-00206-CR**

---

**CHARLES RAY IRVING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1464143**

---

## MEMORANDUM OPINION

In this appeal from a conviction for continuous sexual abuse of a child, the sole question presented is whether the trial court abused its discretion when it admitted certain testimony about a note that was never produced into evidence.

The note was allegedly written by the complainant, a ten-year-old boy, and it came to the attention of one of his teachers at school. When the teacher later testified at appellant's trial, the following exchange occurred during the prosecutor's direct examination:

Q.    Okay. All right. I want to direct your attention to February of 2014. Do you remember an incident concerning a note [the complainant] had made?

A.    Yes. There was a note that was that he wrote—

DEFENSE:  Your Honor, may we approach?

COURT:    You may. Do you want this on the record?

DEFENSE:  Yes, on the record. I had to ask her a quick question.

COURT:    All right. We're on the record.

DEFENSE:  Since they don't have the note, I have not been privy to review the note. [The teacher] doesn't have the note. Anything he testifies about that should be inadmissible. It's hearsay. I have not seen it. I don't know what it is. And I think beyond the question—

COURT:    Do you intend to ask him what the note said?

STATE:    No. I actually intend to ask him about his reaction to the note because—

COURT:    All right. You can proceed in that fashion.

STATE:    Okay.

DEFENSE:  All right.

Q.    All right, [teacher]. Just to be clear before the jury, this note we're referring to, you don't have a copy of that note?

A.    No.

Q.    And you've never provided me a copy of that note?

A.    No, ma'am.

Q.    Okay. And, in fact, we have talked with the principal—

A.    Yes.

Q.    —at your school and she's indicated that she's even looked and cannot find this note, correct?

A.    Yes.

Q.    So we won't get into what exactly what was written on the note, but based on your—

DEFENSE:    Your Honor, I'm going to still renew my objection on this because we don't know what was contained in that note. And anything—

COURT:    What is the objection?

DEFENSE:    That it's all hearsay, Your Honor, because whatever—he can make up whatever he wants to in that note and be extremely prejudicial—

COURT:    No question has yet been asked what is in the note. If that question is asked, then the objection is sustained. But that question hasn't been asked.

DEFENSE:    But, your Honor, I'm renewing my objection because I don't know what's in the note. I have no idea what to, you know, ask him about it because I have never seen the note and the State has never seen the note.[1]

COURT:    What is the specific objection, the legal objection?

DEFENSE:    Irrelevant.

COURT:    It's overruled. You may proceed.

STATE:    Thank you, Your Honor.

Q.    All right. So again, we don't have the note, not talking about what exactly was on the note, but what was your response to the note? What concerns did you have for [the complainant] based on that note?

A.    Okay. Another teacher, which was in ancillary, saw the note first. And then she brought it to my attention. And then immediately when I saw it, I said, you know what, we need to take it to the principal. And we took it to the principal right away. And then us—the three of us agreed that hey, there's something wrong with the way this picture looks. In other words, it demonstrated—

Q.    We can't get into what exactly is on it, but—

---

[1] The court reporter identified this speaker as the prosecutor, but based on the context, the speaker must be defense counsel.

3

A. It was obvious to us that something was wrong. We immediately called Children's Protective Services. We followed through with the process.

DEFENSE: I'm renewing my objection, Your Honor. It's prejudicial and outweighs any probative value. I have not seen this note. We don't know what it is.

COURT: The objection is overruled. Do you have anything else of this witness?

STATE: Very briefly, Your Honor.

Q. So after conferencing with the other teacher and principal, you said you contacted CPS. So is it fair to say that this note gave you concern about something possibly going on with [the complainant] that needed to be addressed?

A. Yes. It gave us—it gave us a red light, a flag, we would say hey—

DEFENSE: Again, Your Honor, I renew my objection.

COURT: The objection is sustained to that response and that question. You may ask your next.

Q. And so what happened next?

A. The next thing, we called CPS, we informed them, we informed the grandmother as well, and we did due process in a situation like that. We got him to see, I believe, a counselor or social worker. And we did the best that we can with the situation, we worked with him, and that's what we did from there.

Q. All right. And earlier the jury heard from [the complainant's] grandmother. After you conferenced with the principal, the teachers, and CPS was called in, to your knowledge, was [the grandmother] brought in on the concerns that you had at the school?

A. As far as I know, the principal took over from thereon because she communicated with the grandmother.

STATE: Pass the witness, Your Honor.

Based on this passage, appellant argues that the trial court abused its discretion because it allowed the teacher to testify about inadmissible hearsay. This argument fails because no hearsay was admitted at all.

4

Hearsay is an out-of-court statement that is offered into evidence for the truth of the matter asserted. *See* Tex. R. Evid. 801(d). There were no such statements in this case because the teacher never testified about the contents of the note. Instead, the teacher testified about the effect of the note, explaining that the note was so alarming to him that he reported it to the principal and to CPS. That testimony does not amount to hearsay. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (documents were not hearsay because they were offered to show how the defendant became a suspect in the investigation).

Appellant argues that the opposite conclusion is required by *Sandoval v. State*, 409 S.W.3d 259 (Tex. App.—Austin 2013, no pet.), but the facts of that case are remarkably different. The witness there testified about the substance of the victim's written statements, which provided "a complete account" of the offense with "specific details." *Id.* at 283. By contrast, the teacher here did not testify about the substance of the complainant's note, nor did the teacher provide any details about the charged offense.

Appellant also complains that the teacher testified about "backdoor hearsay" when he said that "there's something wrong with the way this picture looks" and "it was obvious to us that something was wrong."

Backdoor hearsay refers to an artful method of question and answer that "does not produce hearsay in the classic or textbook sense," but that nevertheless violates the hearsay rule because it creates "an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom." *See Schaffer v. State*, 777 S.W.2d 111, 113–14 (Tex. Crim. App. 1989). The test for backdoor hearsay "necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context." *See Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). When the context is "ambiguous" and there is no

"inescapable conclusion" about the content of the out-of-court statement, the trial court has the discretion to admit the disputed testimony. *Id.* at 262.

Appellant argues that the teacher's testimony qualifies as backdoor hearsay because it "caused the jury to believe that [the complainant] had drawn something on paper or written something on paper that showed that Appellant had indeed committed the crimes alleged in the indictment." But the context did not require that conclusion. The note may have described physical abuse (which was not alleged in the indictment), instead of sexual abuse (which was).

Even if the note had described sexual abuse, there was nothing from the context that identified any specific details of the sexual abuse, which had taken various forms in this case. For example, by the time the teacher had testified, the evidence established that appellant had touched the complainant's penis, that appellant had put his own penis in the complainant's mouth, and that appellant had ejaculated into the complainant's mouth, among other illicit acts. There was no indication which, if any, of these acts were revealed in the complainant's note. Nor was there any indication that the complainant presented his note in the form of a drawing or a written statement, or perhaps even a combination of both. Because no inescapable conclusion could be reached as to the contents of the note, the trial court could have reasonably determined that the prosecutor's questions did not call for backdoor hearsay, and that the teacher could therefore testify about his reactions to the note. *Id.* (holding that testimony did not violate the rule against backdoor hearsay because the testimony did not reveal the substance of the out-of-court statements).

In one final and related complaint, appellant argues that the teacher's testimony about a "red flag" amounted to backdoor hearsay. But the trial court sustained appellant's objection to this testimony, and appellant did not ask for any

6

additional relief. Accordingly, no error has been shown. *See Weedon v. State*, 501 S.W.2d 336, 338 (Tex. Crim. App. 1973).

The judgment of the trial court is affirmed.



/s/　　Tracy Christopher
　　　　Justice

Panel consists of Justices Christopher, Hassan, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).