

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00767-CR

Jose Mario **ALEMAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. 21-CR-81
Honorable Jose Luis Garza, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: June 20, 2024

AFFIRMED

Appellant Jose Mario Aleman was indicted for one count of aggravated sexual assault of a child and one count of indecency with a child. The jury found Aleman guilty of both counts and assessed punishment at one hundred years of confinement. Only challenging his conviction for aggravated sexual assault of a child on appeal, Aleman argues the trial court erred by (1) permitting a sheriff's investigator to relay hearsay testimony to the jury and (2) denying his motion for a new trial. We affirm.

## BACKGROUND

In 2017, Mother regularly dropped off nine-year-old J.R.[1] at the babysitter's house before going to work. Aleman lived in the same house as J.R.'s babysitter. On November 10, 2017, while the babysitter was getting snacks, Aleman followed J.R. into a room, grabbed her, and touched her breasts. The following day, November 11, 2017, Aleman took J.R. to a ranch with another child, A.B. Aleman took J.R. and A.B. to the second floor of a house on the ranch and, while A.B. was outside, Aleman grabbed J.R., pulled down her pants, and penetrated J.R.'s female sexual organ with his finger. Aleman quickly "threw her away" when A.B. returned. Making a deal with the children to not tell anyone that Aleman and J.R. "were just playing," Aleman bought J.R. and A.B. toys and ice cream, and the three returned to the babysitter's house.

Later that afternoon, when Mother returned to the babysitter's house to pick up J.R., J.R. asked Mother if it was normal for Aleman to touch her private parts. Mother called the police, and Officer Dolores Gonzales was dispatched to take a statement and write a report. Mother took J.R. to the hospital, where Nurse Cynthia Gomez examined J.R. Gomez's exam consisted of a general discussion with J.R. followed by a physical assessment. Gomez testified that J.R. told her Aleman had touched her breast the previous day and, on that day, he had touched her female sexual organ with his finger and "moved it." Gomez then conducted a physical assessment where she swabbed J.R. for DNA and noted redness on J.R.'s female sexual organ.

Following Gomez's exam of J.R., Sheriff's Investigator Dario Marquez was assigned to J.R.'s case. Marquez scheduled J.R. for a forensic interview with the Children's Advocacy Center, which Claudia Montoya conducted. The interview took place on November 15, 2017. Although only Montoya and J.R. were in the room during the interview, Marquez watched the interview on

---

[1] To protect the identity of minor children, we refer to the children by their initials and to J.R.'s mother as "Mother."

a live-feed television and could communicate with Montoya through an earpiece. Following the interview, an arrest warrant was issued for Aleman, and he was taken into custody.

*Outcry Hearing*

Because J.R. was nine years old when the offenses occurred, an "outcry witness" could be called to testify regarding relevant statements that would otherwise constitute hearsay. *See* TEX. CODE CRIM. PROC. art. 38.072. The State identified Montoya as the outcry witness, while Aleman contended the outcry witness should be Mother. To resolve the issue, the trial court held a hearing during which J.R., Mother, and Montoya testified.

After hearing the testimony, the trial court signed an order designating Montoya as the outcry witness for both incidents. Aleman moved for reconsideration, which the trial court denied, and the case proceeded to trial on August 1, 2022.

*Trial*

During its case-in-chief, the State called five witnesses in the following order: Gonzales, Marquez, Mother, Gomez, and J.R.

Gonzales generally testified that he was dispatched to the reported assault on November 11, 2017, took a report, and forwarded the information to be assigned to an investigator. Although Gonzales reported the offense as a sexual assault, Gonzales never testified to any details of penetration. Marquez testified next and explained how he became involved in the case and the steps he took during his investigation. Marquez asserted he learned that Aleman's finger had penetrated J.R.'s female sexual organ while observing J.R.'s forensic interview with Montoya. Aleman objected to Marquez's testimony on the basis that it was hearsay, and Marquez was not the designated outcry witness. The State responded by asserting the testimony was not being offered to prove the truth of the matter asserted (i.e., penetration); rather, the State was eliciting

the testimony to show the jury how Aleman became a suspect in the investigation. The trial court overruled Aleman's objection.

Mother testified that after she picked J.R. up from the babysitter's house, J.R. asked if "it was okay for [Aleman] to touch her." She stated that J.R. pointed "to her part, her private" while asking this question. Mother then explained she called a friend in law enforcement and subsequently took J.R. to the Sheriff's Office to report the alleged incident.

Gomez testified that J.R. told her Aleman took her to the ranch, made her sit on top of him, and penetrated her female sexual organ with his finger. She explained that J.R. told her Aleman stopped when A.B. came back into the room. Additionally, the trial court admitted Gomez's forensic exam report into evidence, which showed J.R. told Gomez that Aleman had touched her breasts the day before the ranch incident and that Aleman had penetrated J.R.'s female sexual organ.

J.R. was the State's final witness. J.R. testified that on November 10, 2017, while the babysitter was out getting snacks, Aleman picked her up and started to touch her under her shirt. She told the jury that she did not tell anyone what happened to her that day because Aleman told her not to tell. J.R. then told the jury that Aleman took her and A.B. to the ranch the next day. After Aleman, J.R., and A.B. reached the second floor of the ranch house, Aleman told A.B. to go back to the first floor to look for a ladder because the one they had used to climb to the second floor had broken. J.R. recounted that while A.B. was looking for a ladder, Aleman pulled her onto the couch, pulled her pants down, and put his finger in her female sexual organ. She testified Aleman stopped once A.B. returned, and then Aleman told her and A.B. that he would buy them ice cream and toys, if they did not tell anyone. J.R. recounted what she had told Mother when Mother picked her up—that Aleman touched her, that it did not feel right, and that she asked Mother if what Aleman did was okay. J.R. also testified, however, that she told Montoya more details during the forensic

interview on November 15, 2017, than she told Mother or Gomez—who examined J.R. on November 11, 2017.

After J.R.'s testimony, outside the jury's presence, the trial court changed the designated outcry witness from Montoya to Gomez. Following the parties' closing arguments, the jury found Aleman guilty on both counts and, after finding one enhancement per count to be true, assessed punishment at one hundred years of confinement. Aleman moved for a new trial, arguing, among other things, that it was improper for Marquez to testify to statements he heard while observing J.R.'s forensic interview with Montoya. The trial court denied Aleman's motion and issued findings of fact and conclusions of law.

On appeal, Aleman raises two issues: (1) the trial court committed reversible error when it allowed Marquez's "backdoor" hearsay testimony, and (2) the trial court abused its discretion in denying his motion for a new trial.

## INDIRECT HEARSAY

### *Standard of Review and Applicable Law*

We review the trial court's admission of evidence under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion unless the decision "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

On appeal, Aleman argues Marquez's testimony regarding what he heard while observing J.R.'s forensic interview was impermissible hearsay. "Hearsay is a statement, including a written statement, other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted." *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); TEX. R. EVID. 801(d). Although hearsay, absent a recognized exception or exemption, constitutes impermissible evidence, "[a]n extrajudicial statement or writing which is offered for

the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Dinkins*, 894 S.W.2d at 347 (emphasis in original); Tᴇx. R. Eᴠɪᴅ. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a statute; [the rules of evidence]; or other rules prescribed under statutory authority."). In other words, "[i]f the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay." *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd). However, "[i]f the relevancy of the statement does not hinge on the truthfulness of the statement, it is not hearsay." *Id.* Although appearing straightforward on its face, the rule against hearsay commonly requires concentrated scrutiny by trial courts when, for example, an investigating officer is called to testify about facts learned during the course of an investigation. *Dinkins*, 894 S.W.2d at 347.

Generally, an investigating officer may testify to how a defendant became a suspect in an investigation without such testimony constituting hearsay. *See id.*; *Lyle v. State*, 418 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2013, no pet.). However, the officer's testimony cannot, through artful questioning, be offered to prove the veracity of his investigation. *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). Such a sequence of questioning and answering constitutes impermissible hearsay "where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom." *Id.*; *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999) ("Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context."); *see, e.g.*, *Deary v. State*, 681 S.W.2d 784, 788 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (holding the trial court erred by allowing inadmissible hearsay when it allowed the investigating officer to testify about how he learned who the defendant was); *cf. Davis v. State*, 169 S.W.3d 673, 676–77 (Tex. App.—Fort Worth 2005, no pet.) (holding officer's

testimony that she received the identification of defendant from several anonymous tips was not hearsay because the State elicited the "testimony for the purpose of establishing how [defendant] was developed as a suspect.").

**ANALYSIS**

*A. The trial court erred by allowing Marquez's testimony regarding penetration.*

Count I of the indictment charges Aleman with aggravated sexual assault of a child. *See* TEX. PENAL CODE §§ 22.021(a)(1)(A)(i), (B)(i). This is the only conviction challenged by Aleman on appeal. To secure a conviction on Count I, the State was required to show (1) that Aleman intentionally or knowingly caused the penetration of J.R.'s sexual organ, and (2) that J.R. was younger than fourteen years of age. It is undisputed that J.R. was younger than fourteen years of age at the time of the offense. Accordingly, the only disputed element of the offense at trial was whether the State proved Aleman penetrated J.R.'s sexual organ.

Relevant to the issue at hand, the following exchange occurred during the State's direct examination of Marquez:

| | |
|---|---|
| **State:** | When is the first time that you learned as an investigator that there had been some actual penetration of the child by the defendant or alleged defendant? |
| **Marquez:** | When I learned was — well, from the — |
| **Defense Counsel:** | I object that this would call for a hearsay response. |
| **Trial Court:** | Do you want to respond? |
| **State:** | Judge, I'm just asking him — I don't think it's hearsay. I am asking him when he learned. |
| **Trial Court:** | Overruled. Go ahead. |
| **State:** | When did you first learn about the actual penetration of the child? |

**Defense Counsel:** Judge, again, this question assumes facts not yet in evidence, and it would be clearly a hearsay response. He is assuming that this has already happened.

**State:** I can preface it with my question.

**Trial Court:** Go ahead.

**State:** Did you ever learn that the child claimed to have been penetrated?

**Marquez:** Yes.

**Defense Counsel:** That's a question with — asking for a hearsay response. There is other witnesses that can testify to this. This witness would be responding to hearsay.

**Trial Court:** We are getting close. But it is overruled. Go ahead.

. . .

**State:** Does your report ever reflect that anybody told you before [the forensic interview] about actual penetration?

**Marquez:** No.

. . .

**State:** Based on your report, on what date did you first receive actual knowledge during the course of the investigation that there was actual penetration?

**Marquez:** [During the forensic interview].

Aleman contends the State offered Marquez's testimony to prove Aleman penetrated J.R.'s sexual organ, and because his testimony was inadmissible hearsay, his testimony constituted harmful error entitling Aleman to a new trial. At trial and on appeal, the State argues Marquez's testimony was properly admitted by the trial court because it was not offered to prove the truth of the matter asserted (i.e., penetration by Aleman); rather, the State contends the testimony was offered to show how Aleman became a suspect in the investigation. We disagree.

A police officer "should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that [s]he was entitled to tell the jury the information upon which she acted." *Schaffer*, 777 S.W.2d 115. In *Schaffer*, the Texas Court of Criminal Appeals explained:

> [W]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. In short, "statement" as defined in [Rule 801] necessarily includes proof of the statement whether the proof is direct or indirect.

*Id.* at 114.

Here, the State's line of questioning and the answers elicited from Marquez leave no doubt the State intended to inform the jury of the truth of Marquez's statements. *See id.*; *Head*, 4 S.W.3d at 262–63. The record reflects that there was no link between the State's questions and suspect identification, nor was there any indication that anyone other than Aleman was a potential suspect in the case that may—under specific facts not present here—provoke the need for the State's line of questioning.

We emphasize two important considerations pertinent to our analysis. First, when Marquez took the stand, the only evidence before the jury to prove the elements of aggravated sexual assault had come from Gonzales, who never testified about penetration. Second—in our review of the entire record—we note that during the trial, the trial court changed the outcry designation from Gomez to Montoya. That being the case, any testimony elicited from Marquez about statements made during his observation of the forensic interview were hearsay and would not have come into evidence until J.R. testified.

We find the record reveals an inescapable conclusion that Marquez's testimony was offered to prove penetration and not to show how Aleman became a suspect in the investigation. *Id.*

*Schaffer*, 777 S.W.2d at 114; *cf. Head*, 4 S.W.3d at 262–63 (holding the trial court did not abuse its discretion by permitting an officer to testify that various statements were "consistent.").

Accordingly, we hold the trial court abused its discretion by overruling Aleman's hearsay objection to Marquez's testimony. This abuse alone, however, does not entitle Aleman to a reversal. We must next examine whether the trial court's misstep constitutes a harmful error.

### B. The trial court's error was harmless.

The erroneous admission of evidence, such as improperly admitted hearsay testimony, is generally a non-constitutional error. *See* TEX. R. APP. P. 44.2(b). "Non-constitutional errors require reversal only if they affect an appellant's substantial rights—i.e., when they have a substantial and injurious effect or influence in determining the jury's verdict." *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) ("A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as [a] whole, has fair assurance that the error did not influence the jury, or had but a slight effect."). "In making this determination, the following nonexclusive factors are considered: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and, [sic] relevant voir dire." *Cook*, 665 S.W.3d at 599; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, J.R. testified without objection that Aleman penetrated her female sexual organ with his finger. *See Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.) ("In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection."). Additionally, Gomez's admitted

report memorialized that Aleman penetrated J.R. with his finger. Thus, even without Marquez's testimony, the jury had ample evidence from which it could have derived the necessary element of penetration to convict Aleman of aggravated sexual assault. Further, we find nothing in the record to suggest the State emphasized the complained-of error. Instead, it is Aleman who mentions Marquez's testimony in closing arguments. Accordingly, we hold the error committed by the trial court was harmless. We overrule Aleman's first issue.

### MOTION FOR NEW TRIAL

In his second issue, Aleman argues the trial court abused its discretion when it denied his motion for new trial. Aleman's motion for new trial raised the same arguments as he did in his first appellate issue. That is, Aleman argues the trial court's denial of his motion for new trial was clearly erroneous and arbitrary because Marquez's testimony affected his substantial rights.

"We review a trial court's ruling on a motion for new trial using an abuse-of-discretion standard of review." *Cantu v. State*, 678 S.W.3d 331, 340 (Tex. App.—San Antonio 2023, no pet.). In our review, we "view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume that all reasonable fact findings in support of the ruling have been made." *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014); *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) ("[A] trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling."). Here, the trial court issued findings of fact and conclusions of law. "We review the trial court's findings of fact and application of law to fact questions that turn on credibility and demeanor for an abuse of discretion." *Cantu*, 678 S.W.3d at 341.

Aleman avers the trial court abused its discretion by denying his motion for new trial based on Marquez's erroneously admitted testimony. The trial court's findings and conclusions reveal it denied Aleman's motion because it determined that Marquez's testimony was offered to show how

Aleman became a suspect in the investigation and was not offered to prove the truth of his statements. As we have discussed, however, the trial court erred by allowing the admission of Marquez's statements under the guise of non-hearsay testimony. Nevertheless, as we have concluded, the trial court's error did not affect Aleman's substantial rights because there is evidence other than Marquez's testimony establishing the necessary elements of the convicted offense. Because the trial court's error did not affect Aleman's substantial rights, we hold the trial court did not abuse its discretion in denying Aleman's motion for new trial. *See* TEX. R. APP. P. 44.2(b); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (affirming denial of motion for new trial where trial court's error was harmless). We overrule Aleman's second issue.

## CONCLUSION

Having overruled both issues presented for our review, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH