COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




SANCHEZ HENRY,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00367-CR



Appeal from the


Criminal District Court No. 2


of Dallas County, Texas 


(TC# F04-55644-RI) 



O P I N I O N


 Sanchez Henry appeals his capital murder conviction. A jury found him guilty and he
was sentenced to life imprisonment. He brings two issues: (1) that the trial court erred in
allowing a police detective to testify to an oral statement in violation of Tex.Code Crim.Proc.
Ann. art. 38.22, § 3(a); and (2) that the trial judge erred in allowing the State to introduce
codefendants' statements through backdoor hearsay.

 In August 2004, Luis Perez was the night shift manager at the Swedish Massage Institute
("SMI") in Dallas, Texas. SMI was an adult-oriented, mostly cash, business and the owner kept
a 12-gauge sawed-off shotgun and a 22-caliber pistol in the office. Mr. Perez also carried a nine-millimeter handgun in a belt holster. The business operated twenty-four hours a day, seven days
a week. To enter, customers had to ring the doorbell at the front door, which always remained
locked. There was also a permanently locked rear door. Mr. Perez was responsible for the cash
receipts until he was relieved by the next manager, or by the owner, who usually came in around
noon to pick up the money. The business did not have a safe, so he kept the money on his
person.

 At 6 a.m. that morning, Mr. Perez and SMI employee, Maria Rodriguez, were alone in the
business. Ms. Rodriguez was sitting on the sofa in the office, waiting for a ride. The doorbell
rang and Mr. Perez looked out and saw Tosha Dunagin, or "Sosha," a former employee, at the
front door. He let her in. Ms. Dunagin had been fired a month earlier, but said she came to pick
up a cell phone charger she had left there. Mr. Perez let her in and she began looking through
some drawers in the front. A minute later, two black males, who were later identified as
Appellant and Timothy Johnson, were banging on the front door. The men were pulling on the
door and seemed desperate to get in. Ms. Dunagin denied knowing the men at the door. 
Mr. Perez sensed something was wrong, so he went into the office, grabbed the shotgun, told 
Ms. Rodriguez to stay in the waiting room, and then walked Ms. Dunagin to the back door.

 Mr. Perez opened the back door, walked out, and started yelling at the two men to leave. 
They ignored him and started walking toward him. As Mr. Perez started walking back and
reached to close the door, Ms. Dunagin pointed a gun at his head and ordered him to leave the
door open. Mr. Perez begged her not to shoot him, but she stepped back and shot him in the
stomach. Mr. Perez fell down and dropped the shotgun. Then Ms. Dunagin ran back down the
hallway toward the front door. Mr. Perez crawled to a corner and called 911 on his cell phone. 
As he was talking to the operator, he saw Ms. Dunagin coming back down the hallway with the
two black males, the Appellant, and Johnson. Johnson was holding Ms. Rodriguez by her neck
and pointing a gun at her head, pulling and dragging her toward Mr. Perez. Appellant was
walking behind Johnson and Ms. Dunagin was behind Appellant. Ms. Rodriguez was screaming
and crying.

 Mr. Perez stood up and pulled out his handgun, and aimed it at the intruders. Mr. Perez
fired one warning shot and then fired again, hitting Appellant. When Appellant fell, Johnson
pushed Ms. Rodriguez into an adjoining room. Ms. Dunagin grabbed Appellant and began
dragging him toward the front of the building. Seconds later, Mr. Perez heard a gunshot and saw
Johnson run out of the room and flee down the hall with Ms. Dunagin and Appellant. Within
minutes, the ambulance arrived. Mr. Perez was transported to the hospital for emergency
surgery. Ms. Rodriguez was found dead at the scene from a gunshot wound to her trunk and
upper extremities that perforated the lung and heart.

 About 6:30 a.m. that same morning, a black male, later identified as Appellant, arrived at
Methodist Hospital seeking treatment for a gunshot wound. He was accompanied by a male and
female, later identified as Johnson and Ms. Dunagin. Ms. Dunagin claimed that Appellant had
been shot in an attempted carjacking. While assisting them, Sergeant Edward O'Neal became
suspicious when he noticed Ms. Dunagin was being coached on what to say by Johnson. 
Appellant was admitted into the hospital for treatment, but provided a false name. Johnson
disappeared on foot when Sergeant O'Neal notified the Dallas Police Department about the
alleged carjacking.

 Detective Dan Lusty of the Dallas Police Department was assigned to investigate the
homicide at SMI. The police were looking for ex-employee Ms. Dunagin and two unknown
suspects. When the call came in from Methodist Hospital, Detective Lusty suspected that those
two males and female were the suspects they were looking for. A guard was placed at
Appellant's room at the hospital and Ms. Dunagin was taken into custody. Ms. Dunagin was
taken to the police station and eventually gave a statement to police. From her statement, police
learned that the wounded man was her boyfriend, Appellant, and the man who fled was Timothy
Johnson, Appellant's nephew. Based on the interview with Ms. Dunagin, police officers
apprehended Johnson at Ms. Dunagin's apartment. Johnson later gave a statement to the police. 
Following Johnson's interview, Appellant was interviewed at the hospital and gave a statement
to Detective James Stacy.

ORAL STATEMENT

 In Issue One, Appellant argues the trial court erred in allowing Detective Stacy to testify
to an oral statement made by Appellant in violation of Article 38.22, Section 3(a) of the Texas
Code of Criminal Procedure.

 Article 38.22, Section 3 of the Texas Code of Criminal Procedure dictates that: "(a) No
oral or sign language statement of an accused made as a result of custodial interrogation shall be
admissible against the accused in a criminal proceeding unless: (1) an electronic recording,
which may include motion picture, video tape, or other visual recording, is made of the statement
. . . ." Tex.Code Crim.Proc.Ann. art. 38.22, § 3(a)(1)(Vernon 2005).

 At trial, Detective Stacy read Appellant's voluntary statement to the jury. In Appellant's
statement he stated, in relevant part:

 Tosha, Spliff and me went to the massage parlor to get some change. Tosha went
in first. She went in there to get some change. I rang the doorbell. The door
opened up and I walked in.


After reading the rest of the statement, the State prosecutor asked Detective Stacy if he asked
Appellant what he meant by "I went to get some change." Defense counsel objected "to the oral
statements." In response, the State prosecutor argued that the response went to the explanation of
the written statement because it was slang. The court overruled Appellant's objection and
Detective Stacy testified that the phrase was street language that meant Appellant went there to
rob the place.

 The State argues that Appellant has failed to preserve his complaint about the
inadmissibility of his unrecorded oral statement by failing to make a timely and specific
objection to Detective Stacy's testimony. Indeed, in order to preserve an issue for appellate
review, there must be a timely objection, that specifically states the basis for the objection, unless
the specific grounds were apparent from the context. See Tex.R.App.P. 33.1(a)(1)(A); Valle v.
State, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003); Ethington v. State, 819 S.W.2d 854, 858
(Tex.Crim.App. 1991). In this case, however, Appellant objected to his oral unrecorded
statement, which was about to be offered by Detective Stacy, but which was not a part of his
written statement to police. Although he may not have specifically referred to Article 38.22 in
his objection, we find that his objection was sufficiently specific and the grounds clearly 
apparent from the context, especially given his previous attempts to raise the same objection
earlier in Detective Stacy's testimony about "oral statements" made by Appellant during his
police interview. The trial court overruled those objections, remarking that they were premature. 
Because the trial court was aware of Appellant's objection and the specific grounds were
apparent from the context, we find that Appellant has not waived his complaint. 

 In reviewing the complained-of testimony, it is clear that the State asked Detective Stacy
to relay Appellant's response to his request for an explanation of the phrase "went to get some
change." Detective Stacy stated, "I hadn't heard that street language on that before, but it meant
that he went to rob the place." The record shows that Appellant was in custody when he made
his responsive statement to Detective Stacy and that this statement was not recorded or otherwise
reduced to writing. Therefore, the trial court erred by admitting the oral statement over
Appellant's objection.

 But, having found error, we must conduct a harm analysis to determine whether the error
warrants reversal. See Tex.R.App.P. 44.2. As Appellant's counsel at oral argument
acknowledged, the Court of Criminal Appeals has determined that Article 38.22's recording
requirement for an oral statement is a procedural evidentiary rule rather than a substantive
exclusionary rule. See Davidson v. State, 25 S.W.3d 183, 186 (Tex.Crim.App. 2000); see also
Davidson v. State, 42 S.W.3d 165, 167 (Tex.App.--Fort Worth 2001, pet. ref'd). Consequently, a
harm analysis under Tex.R.App.P. 44.2(b) for non-constitutional error, we must disregard the
error if it does not affect Appellant's substantial rights. See Tex.R.App.P. 44.2(b). A substantial
right is affected when the error had a substantial and injurious effect or influence on the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). A criminal conviction
should not be overturned for non-constitutional error if the appellate court, after examining the
record as whole, has fair assurance that the error did not influence the jury, or had but a slight
effect. Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

 The record shows that early in the morning on August 30, 2004, Appellant went to SMI
with his girlfriend Tosha Dunagin and his nephew Timothy Johnson. His girlfriend had worked
there and was only recently fired. Mr. Perez testified that she knew about the door locks, where
the cash was kept, and where the weapons were. Ms. Dunagin and Johnson both came armed. 
Ms. Dunagin gained entry under the pretense of looking for a lost cell phone charger. Appellant
and Johnson banged on the front door in a desperate manner, an apparent ruse to gain entry. 
Ms. Dunagin denied knowing the men. After Mr. Perez opened the back door, Ms. Dunagin shot
him. Appellant and Johnson entered the business after Mr. Perez had been shot. Mr. Perez
testified that Appellant and his codefendants approached him, holding Ms. Rodriguez hostage. 
Ms. Dunagin would have known that Mr. Perez was holding all the cash on his person.

 In light of the other evidence presented and the circumstances surrounding the incident
that morning, the jury could have reasonably inferred the meaning of "went to get some change"
in Appellant's written statement without Detective Stacy's testimony. During closing argument,
the State prosecutor in response to defense counsel's closing argument reminded the jury that in
the 911 emergency tape, Mr. Perez stated that a female and two males were robbing the place. 
Though the prosecutor did not mention Detective Stacy's testimony about Appellant's
unrecorded oral statement, but he did argue that Appellant confessed to the crime when he said
"Tosha, Splif and me went to the massage parlor to get some change."

 After reviewing the record as a whole, we have some fair assurance that the error did not
influence the jury, or had but a slight effect, therefore we conclude it was harmless. Because the
error did not affect Appellant's substantial rights, while we do not condone it, we must disregard
it. See Tex.R.App.P. 44.2(b). Issue One is overruled.

BACKDOOR HEARSAY

 In his second issue, Appellant contends the trial court erred in allowing the State to
introduce through backdoor hearsay statements by codefendants, which implicated Appellant in
planning the robbery.

 We review a trial court's decision to admit or exclude evidence under an abuse of
discretion standard. Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex.Crim.App. 1991)(Op.
on reh'g). An abuse of discretion exists when the trial court's decision was so clearly wrong as
to lie outside the zone of reasonable disagreement, in other words, the trial court's decision or
action was arbitrary, unreasonable, and made without reference to any guiding rules or principles. 
Montgomery, 810 S.W.2d at 391.

 On direct examination, Detective Lusty testified about his investigation of the three
suspects in the murder and about how he determined that he would charge them each with capital
murder. Appellant claims that Detective Lusty's testimony was inadmissible because it was
backdoor hearsay, through which the State was allowed to introduce his codefendants' out-of-court statements.

 "Hearsay" is a statement, other than one made by the declarant while testifying at trial,
offered in evidence to prove the truth of the matter asserted. Tex.R.Evid. 801(d). An out-of-court statement need not be directly quoted to run afoul of the hearsay rules. Head v. State, 4
S.W.3d 258, 261 (Tex.Crim.App. 1999); Schaffer v. State, 777 S.W.2d 111, 114 (Tex.Crim.App.
1989). Conversely, a statement not offered to prove the truth of the matter asserted is not
hearsay. Dinkins v. State, 894 S.W.2d 330, 347 (Tex.Crim.App. 1995). Generally, testimony by
a police officer offered to show how the defendant became a suspect in an investigation is not
hearsay. See id. at 347; Jones v. State, 843 S.W.2d 487, 499 (Tex.Crim.App. 1992), overruled in
part on other grounds by Maxwell v. State, 48 S.W.3d 196, 200 (Tex.Crim.App. 2001). In such
instances, the hearsay problem is avoided because the testimony was offered not to "prove the
truth of the matter asserted," but rather to explain how the defendant became a suspect. See
Dinkins, 894 S.W.2d at 347. Whether testimony constitutes impermissible indirect hearsay
"turns on how strongly the content of the out-of-court statement can be inferred from the
context." Head, 4 S.W.3d at 261. Stated otherwise, the question is whether the strength of the
inference produces an "inescapable conclusion" that the evidence is being offered to prove the
substance of an out-of-court statement. Id. at 262; Schaffer, 777 S.W.2d at 114.

 Appellant complains of the following exchanges:

 Q: Once you interviewed and took the confession from Tosha Dunagin, did
you place her under arrest?


 A. Yes.


 Q. What did you charge her with?


 A. Capital murder.


 Q. Why did you charge her with capital murder?


 A. Well, it was her intent. They planned and prepared themselves and went
there for the purpose of robbing the place of money, and in the course of 
doing that, they shoot someone and they kill someone.


 Defense counsel: Your Honor, I'm going to object to this as
being based on hearsay and statements of
the--


 Court: Overruled.


 Q: You may continue.


 A. Well, based on the witness's testimony and the statements, you know, they
had planned to go to the business. 


 Defense counsel: Your Honor, I'm also going to object that
this isn't based on personal knowledge.


 Court: Overruled.


Detective Lusty continued his testimony, explaining that his determination of the charge was
based on his investigation and approval from his sergeant and the D.A.'s office. The prosecutor
then asked:

 Q. So when you are putting together--when you're deciding what charges to
arrest someone with and charge them with, you do that based on the
evidence you gather during your investigation?


 A. That's correct.


 Q. So why did you charge Tosha Dunagin with capital murder?


 A. Because Tosha Dunagin went in there with the intent to rob someone. She
ended up--she was involved, and she shot one of the witnesses. 


 Defense counsel: Your Honor, I'm going to renew my
objections to this testimony and ask for a
running objection for this line.


 Court: All right. Overruled.


Detective Lusty was also asked about his investigation of Timothy Johnson. 


 Q. Based on your investigation, once you interviewed Timothy Johnson, what
did you charge him with?


 A. Capital murder.


 Q. Why did you charge him with capital murder?


 A. Because of his participation. The evidence that I learned, that he
participated in that same event.


Detective Lusty was then asked about the capital murder charge filed against Appellant. 


 Q. Why did you do that?


 A. Because of the investigation and the evidence we had indicated what his
participation was, his involvement, in this offense. 


. . .



 Q. You believe he was a willing participant based on his statement and your
investigation to robbing the massage parlor institute?


 A. That's correct. 


 It has been pointed out that defense counsel objected to Detective Lusty's statement,
"[w]ell, based on the witness's testimony and the statements, you know, they had planned to go
to the business" on the ground that it was not based on personal knowledge, not on the ground
that it constituted hearsay, or backdoor hearsay. Therefore, Appellant's complaint as to this
particular statement is waived on appeal. See Tex.R.App.P. 33.1(a)(1)(A).

 But, as to the first statement, the State prosecutor prefaced the question about
Ms. Dunagin's arrest charges to Detective Lusty on what he did "[o]nce [he] interviewed and
took the confession from Tosha Dunagin . . . ." While Detective Lusty's testimony could likely
have been based on information and facts he surmised from the state of the evidence, including
presumably Mr. Perez's first-hand account of the events, in the context of the inquiry, we find
that the strength of the inference as to the substance of an out-of-court statement by Ms. Dunagin,
i.e., her "confession," is simply so strong that it leads us to the "inescapable conclusion" that this
statement regarding her intent, plan, and preparation to commit a robbery, was being offered to
prove its content. We find, therefore, that the trial court abused its discretion in admitting this
particular testimony.

 As for the remaining disputed testimony, we simply cannot say that the trial court abused
its discretion in admitting it because Detective Lusty indicated that his conduct in charging
Ms. Dunagin, Johnson, and Appellant for capital murder was based on evidence gathered during
his investigation. In this context, Detective Lusty's remaining testimony does not lead to any
inescapable conclusions as to the substance of the alleged out-of-court statements. In other
words, any inference the jury could have drawn as to the substance of the alleged out-of-court
statements was not strongly suggested by the context of Detective Lusty's remaining testimony
concerning the course of his investigation. Therefore, the trial court could have reasonably
concluded that as to the remaining disputed testimony, the State's "sole intent" in pursuing this
line of questioning was not to convey to the jury the contents of the out-of-court statements. See
Head, 4 S.W.3d at 262, quoting Schaffer, 777 S.W.2d at 114.

 However, and even assuming that all of Detective Lusty's disputed testimony was
hearsay, we must nevertheless find that the error in admitting that which was hearsay was
harmless. Again, if after examining the record as a whole, we have fair assurance that the error
did not influence the jury, or had only a slight effect, we may not overturn a criminal conviction
for non-constitutional error. See Johnson, 967 S.W.2d at 417; see also Tex.R.App.P. 44.2(b). 
The record before us shows that other evidence that implicated Appellant as a suspect in the
robbery, including Mr. Perez's eyewitness statements, Appellant's seeking of medical treatment
for the gunshot wound with Ms. Dunagin and Johnson, and his confession that he entered the
business to "get some change." Moreover, there was sufficient evidence to support the jury's
verdict without reference to the hearsay statements. We finally note that in its closing argument,
the prosecutor only stated that after Ms. Dunagin gave a statement, the police were looking for
Appellant and Johnson as suspects. Because the error would have had only a slight effect on the
jury's verdict, we must hold it harmless. Issue Two is overruled.

 Because we find no reversible error, we must affirm the trial court's judgment.


August 23, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)