**Judgment Modified and Affirmed as Modified and Opinion filed February 6, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00268-CR

## ALEXANDER PORTERFIELD SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 147th District Court
Travis County, Texas
Trial Court Cause No. D-1-DC-17-201426

## O P I N I O N

Appellant Alex Porterfield Sanchez appeals his conviction for a felony assault offense involving strangulation. In three issues, he complains that he was not properly notified of the State's intent to use extraneous offenses as a basis for enhancing the conviction, that the trial court abused its discretion in admitting "backdoor" hearsay, and that the trial court reversibly erred in later permitting the same officer to testify about the complainant's answers to his questions. We

affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Appellant was indicted for an assault offense as described under section 22.01(b-1) of the Penal Code,[1] or "Assault–Family Violence by Strangulation with a Prior Family Violence Conviction." The original indictment contained paragraphs listing two prior felony family-violence convictions in 2008 and 2012. On the day of jury selection, the State filed an amended indictment, removing the paragraph listing the prior 2012 Assault Family Violence conviction.

At trial, the jury heard testimony from the complainant, her son, a neighbor, a responding paramedic, two of the responding officers, (Christopher Morrison and Christopher Knodel), the State's retained non-expert paramedic with experience treating strangulation victims (Cheryl Bahktiari), and a victim service counselor with the Austin Police Department (Jeannie Tomanetz). Appellant also testified.

Appellant and the complainant began dating in 2015. The two had broken up and reignited their relationship several times leading up to the February 25, 2017 offense at issue in today's case. The complainant and appellant each admitted that on the night in question, they had been drinking and were arguing. After parting ways on poor terms at a service station, the complainant drove to pick up her son from his workplace and to help him with a car problem. The complainant and her son drove to a fast-food restaurant to eat and then went back to the complainant's apartment so that she could get a "jumper box." Her son waited in the car.

As the complainant's task to fetch the jumper box appeared to be taking too long, the son went to the apartment. As he approached, he heard his mother

---

[1] Under the current statutory revision, the same offense is defined under subsection (b-3) of section 22.01 of the Texas Penal Code.

screaming. The neighbor also testified that she heard screaming and called the police. The son entered the bedroom and found his mother lying on the bed, her face was bloody and her eye was swollen. She was not recognizable. The complainant's son testified that appellant was hovering above the complainant. The son described appellant as jumpy. When the son told appellant to leave, appellant refused and pushed him out of the room. The son left to get his cell phone.

The complainant testified that when she went into the apartment, appellant grabbed her by the back of the neck and pushed her into the bedroom. She did not remember anything after that until she woke up in the hospital the next day. The complainant testified that she did not remember being interviewed by a police officer in the hospital.

Responding police officer Knodel testified about his investigation, including his hospital interview with the complainant and his preparation of the victim-assault statement and its strangulation supplement. Over appellant's overruled hearsay objection, the trial court let Knodel testify as to the complainant's answers to Knodel's questions.

Appellant presented a different version of the events occurring in the apartment. He said the complainant was there when he arrived, and that she went to the bathroom and screamed for him to leave. He said that when she came out, she laid down on the mattress and pulled the covers over her. Appellant reported that she then started punching him in the face with her fists, that she put her hand inside his mouth, and that he bit her in an attempt to get away.

Appellant admitted that he had been convicted of family-assault offenses in the past, including two prior Assault Family Violence convictions in 2008 and 2012, but he said that in this instance, he was the victim and was acting in self-

defense.

The trial court admitted into evidence recordings of post-indictment jail calls between the appellant and the complainant. In several calls the complainant remarked that appellant nearly killed her and asked appellant to admit it. During one call, in response to appellant's accusation that the complainant hit him, the complainant responded, "if I hit you, it was because you were choking me."

Photos of the complainant taken while she was in the hospital revealed scratches and marks on each side of her neck. Officer Knodel and paramedic Bahktiari both reviewed the photographs and testified that these injuries were consistent with defensive marks commonly found on victims of strangulation.

The trial court instructed the jury on the second-degree felony offense of Assault–Family Violence by Strangulation with a Prior Family Violence Conviction, the third-degree felony of Assault–Family Violence with Prior Family Violence Conviction, and the lesser offense of Deadly Conduct. The charge also included instructions on self-defense.

The jury found appellant guilty of the second-degree felony offense, Assault–Family Violence by Strangulation with a Prior Family Violence Conviction. Before the punishment phase commenced, appellant's trial counsel, acknowledging the State's previously filed *Notice of Intent to Seek Higher Punishment Based on Prior Conviction Pursuant to Brooks v. State, 957 S.W.2d 30 (Tex. Crim. App. 1997)* ("*Brooks* Notice"), objected to enhancement. Appellant's trial counsel argued that the State had misled the jury about the punishment associated with the offenses at issue, stating, "we feel that it is misleading and disingenuous now to, in fact, move forward on a different level." The trial court overruled the objection, and stated "if, in fact, the Court believes that that was this individual who was convicted of that, then, as far as punishment range, it's in my

4

discretion to punish within the first-degree range based on him being convicted of a Second Degree." Based on a prior felony conviction, the trial court enhanced appellant's punishment and used the range of punishment for a first-degree felony. At the conclusion of the punishment phase, the trial court assessed appellant's sentence at 25 years' incarceration.

## II. ISSUES AND ANALYSIS

### A. Did the trial court err in permitting the State to use evidence of appellant's prior 2012 felony family-violence conviction as enhancement evidence?

In his first issue, appellant claims that the State failed to provide proper notice of its intent to use evidence of a prior conviction for purposes of enhancing punishment and that this alleged failure caused the trial court to enhance appellant's punishment and assess an illegal sentence.

We first consider whether appellant preserved his complaint for appellate review. The record must show, among other prerequisites to preserving error, that the objection raised at trial comports with the complaint raised on appeal. Tex. R. App. P. 33.1(a)(1); *Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The record does not show that appellant objected to any alleged defect in the *Brooks* Notice itself or complained that the State failed to provide the *Brooks* Notice. Yet, on appeal, those arguments form the crux of appellant's complaint. Because appellant failed to present these objections in the trial court, he has forfeited these arguments on appeal. *See Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Under his first issue, appellant also asserts that the judgment is facially invalid because the judgment indicates a conviction for a second-degree felony, "N/A" as to all fields relating to enhancement paragraphs, and a sentence that

5

exceeds the permissible range for a second-degree felony.[2]  Neither party disputes the manner of the trial court's oral rendition or that the trial court adequately explained that punishment for the second-degree felony had been enhanced by virtue of a prior third-degree felony conviction.  Though the statements in the trial court's judgment are correct, the trial court did not mention in the judgment that appellant's punishment had been enhanced.  We have authority to modify a judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Specifically, we may modify judgments to correct improper recitations or omissions relating to punishment when the court has the necessary data for reformation. *See* Tex. R. App. P. 43.2(b) (permitting the court of appeals to modify the trial court's judgment); *Lopez v. State*, 515 S.W.3d 547, 550 (Tex. App.— Houston [14th Dist.] 2017, pet. ref'd)(reforming judgment to conform to the sentences that were orally pronounced). We modify the judgment to add a statement that the trial court enhanced appellant's punishment based on a prior third-degree felony conviction and used the range of punishment for a first-degree felony. *See* Tex. Pen. Code Ann. § 12.42.

**B.  Did the trial court err by allowing the State to present "backdoor" hearsay testimony offered through the investigating officer?**

In his second issue, appellant complains that the trial court abused its discretion by permitting inadmissible "backdoor" hearsay testimony to reveal the complainant's answers to questions about the victim-assault statement.

---

[2] The Penal Code provides punishment ranges in felony cases that vary based on the degree of the felony.  A second-degree felony carries a "term of not more than 20 years or less than 2 years," a first-degree felony carries a "term of not more than 99 years or less than 5 years." The relevant enhancement statute provides that "if it is shown on the trial of a felony of the second degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the first degree." Tex. Pen. Code Ann. § 12.42.

The hearsay rule, subject to various exceptions, prohibits out-of-court "statements" other than those "made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). The rule does not limit just out-of-court verbal assertions. *See* Tex. R. Evid. 801(a). The rule defines "statement" to include "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." Tex. R. Evid. 801(a). An out-of-court "statement" need not be directly quoted to run afoul of the hearsay rule. *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). The "backdoor" (or indirect) hearsay doctrine aims to prevent parties from eliciting testimony that indirectly reveals the substance of out-of-court statements. *Schaffer v. State*, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989).

As a threshold inquiry, we consider whether appellant preserved error on his appellate complaint in the trial court by a proper objection and a ruling on that objection. *Leyba v. State*, 416 S.W.3d 563, 569 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Geuder v. State,* 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). To preserve error the objection must be timely and specific enough to make the trial court aware of the grounds for the objection (unless the ground is implied by the context of the objection). Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a). The objection at trial must comport with the complaint raised on appeal. Tex. R. App. P. 33.1(a)(1); *Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.). And, the objecting party must complain each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on the complaint in a hearing outside the presence of the jury. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991); *Washington v. State*, 449

7

S.W.3d 555, 565–66 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The record shows appellant failed to preserve error.

The record reflects a single instance where appellant lodged an objection fairly characterized as hearsay or "backdoor" hearsay. After Officer Knodel testified generally about the investigative use and purpose of victim-assault statements, the following exchange took place:

> Q. Now, I don't want you to tell me what her answers were, but I would like to know if you asked her if she -- if the defendant had ever threatened to kill her?
>
> MS. BODE VAZQUEZ: I'm going to object to hearsay.
>
> MS. MAY: Your Honor, this is not hearsay. I'm asking him to provide --
>
> THE COURT: Let me read the question.
>
> MS. BODE VAZQUEZ: She's asking what he said.
>
> THE COURT: No. The question was "Now, don't want you to tell me what her answers were, but I would like to know if you asked her if she -- if the defendant had ever threatened to kill her." It's just a question.
>
> So, he can answer that question.
>
> Q. (By Ms. May) Officer Knodel, did you ask Jada Hernandez if the defendant ever threatened to kill her?
>
> A. Yes, ma'am.
>
> Q. Don't tell us what the answer was, but did she provide an answer?
>
> A. Yes, ma'am.
>
> Q. Did you document that answer on the AVS?
>
> A. Yes, ma'am.

The prosecutor continued with more questions to Knodel about whether he asked, and whether the complainant answered, other questions derived from the victim-assault statement and its supplement, including the following:

Had appellant ever tried to strangle her before?

Had she ever moved away from appellant?

Whether she had children living in the house?

The method or manner that she was strangled?

Whether appellant was right handed or left handed?

How long was she strangled?

Pressure used during strangulation?

What appellant said while strangling her?

What she said while appellant was strangling her?

What she thought was going to happen if he continued?

What made appellant stop strangling complainant?

The State asked and Knodel answered these questions virtually uninterrupted. Appellant lodged no "hearsay" or "backdoor hearsay" objection beyond the first question, and did not request a running objection. Appellant's counsel interrupted once when the prosecutor asked Knodel about the questions he asked the complainant about how she was strangled, and then objected only on grounds of "relevance" and "leading". To the extent appellant contends that these objections sufficed to preserve any part of his "backdoor hearsay" complaint for appellate review, his argument fails because neither of these objections comport with the hearsay complaint appellant urges on appeal. *See Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Moreover, because appellant failed to object to the subsequent questions and answers, failed to obtain a running objection, and failed to get rulings on any objection outside the jury's presence, appellant has not preserved his "backdoor hearsay" complaint to any of the subsequent testimony concerning the victim-assault statement and its supplement. *See Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). So, these issues afford no basis for appellate review.

We now turn to appellant's "backdoor"-hearsay-based complaint to the trial court's admission of testimony pertaining to the State's first question from the assault-victim statement about whether Knodel had asked the complainant if the appellant "had ever threatened to kill her." Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context, or whether the strength of the inference produces an "inescapable conclusion" that the evidence is being offered to prove the substance of an out-of-court statement. *Head v. State*, 4 S.W.3d 258, 261-62 (Tex. Crim. App. 1999).

In *Schaffer*, the defendant, facing narcotics charges, testified at trial that at the time of his arrest he was working as an informant, and named his police contact as "Jimmy Seals." *Schaffer v. State*, 777 S.W.2d at 113. In lieu of calling Seals to the stand, the State called another officer who testified that he had spoken to Seals earlier that day, and that after his conversation with Seals he would not ask the State to drop the case. *Id.* The Court of Criminal Appeals agreed with the court of appeals, that the officer's testimony was offered solely to rebut the defendant's testimony. *Id.* Without stating that Seals told him that the defendant was not an informant, or even paraphrasing such a conversation, the testifying officer's testimony informed the jury that Seals told him that the defendant was not an informant. *Id.*

Neither the question posed to Officer Knodel nor his answer bears any resemblance to the testifying officer's testimony in *Schaffer*. Officer Knodel's testimony that he asked the complainant if appellant had ever threatened her life before, as well as the immediate follow-up questions, did not lead to any inescapable conclusions as to the substance of the complainant's out-of-court statements; rather, the testimony revealed only that the officer had asked these

10

questions and the complainant had answered the questions. "Yes," "No," "I don't know" all seemed reasonably possible answers, but none had been indirectly revealed. *See Head v. State*, 4 S.W.3d 258, 261-62 (Tex. Crim. App. 1999) (finding investigator's testimony that complainant's out-of-court statements were "consistent with" family-member statements that already were in evidence did not indirectly reveal the substance of such out-of-court statements). Thus, as to these first questions to Officer Knodel pertaining to the assault victim statement, the trial court did not abuse its discretion in overruling appellant's objection and permitting the testimony. *Id.* In any event, if the trial court erred in permitting this evidence the error would be harmless for the reasons set forth in Part II.C, below. We overrule appellant's second issue pertaining to "backdoor" or indirect hearsay.

## C. Presuming the trial court erred in admitting the complainant's responses to the investigating officer's questions, did the admission of the evidence harm appellant?

In his third issue, appellant complains that the trial court committed reversible error by allowing inadmissible hearsay — the complainant's responses to the assault victim statement — through Officer Knodel on the ground that the State had laid a hearsay exception predicate under Texas Rule of Evidence 803(5). Appellant contends that the State failed to lay the proper predicate because the complainant failed to vouch for the accuracy of the statements.

Presuming, without deciding, that the trial court abused its discretion by permitting Officer Knodel to testify as to the complainant's answers, we move directly to the harm analysis and consider whether appellant's substantial rights were affected by the admission of the testimony.

The erroneous admission of hearsay is non-constitutional error. Tex. R. App. P. 44.2(a); *Fischer v. State*, 207 S.W.3d 846, 860 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008). As the reviewing

11

court, we disregard a non-constitutional error that does not affect a criminal defendant's substantial rights. See Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 4. We deem the error harmless if, after examining the record as a whole, we find reasonable assurance that the error did not influence the jury's verdict or had but a slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). A trial court's improper admission of evidence is not reversible error if the trial court admits the same or similar evidence without objection at another point in the trial. *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

During Officer Knodel's second trip to the witness stand he testified that the complainant answered "Yes" when he asked her if appellant ever threatened to kill her, "Yes" when he asked if she had ever left the appellant after living together, and "Yes" when he asked if she wanted an emergency protective order. Knodel also testified to the complainant's answers to the strangulation supplement. Knodel reported that the complainant's answers reflected that appellant had tried to strangle her with two hands, that appellant strangled her for one to two minutes, that she estimated, on a scale of 1 to 10, that the pressure during the strangulation reached a "10," that she told appellant to stop, that she had tried to push appellant off, that she did not remember anything appellant said to her, that she thought she was going to die while he was strangling her, that appellant stopped strangling her when her son came in, and that he had attempted to strangle her once before.

Most of the information conveyed through Officer Knodel's testimony about the complainant's answers to the assault-victim statement matched the same or similar evidence admitted without objection at other points in the trial:

- The complainant testified that appellant had tried to strangle her before, which itself is life-threatening conduct.

- The complainant, her son, and appellant all testified that the complainant and appellant had broken up and ceased living together before appellant had moved back in with her two months before the strangling event in question.

- Appellant testified that a protective order was in place and he admitted to having violated it. During the jail calls, the complainant expressed a desire that appellant stay out of her life.

- Officer Knodel testified that when he visited the complainant in the hospital he saw neck injuries consistent with strangling with considerable pressure. Knodel took photographs of the complainant's injuries that the trial court admitted those photographs into evidence. Knodel explained the marks on the complainant's neck as consistent with defensive marks of a victim trying to move the hands of the attacker from the victim's neck.

- Bahktiari also testified that the complainant's wounds appeared to be defensive marks. The photographs revealed these marks on both sides of the complainant's neck. Bahktiari also discussed common symptoms of a strangulation victim when the  pressure exerted is significant enough to impede blood circulation. These symptoms are consistent with the complainant's trial testimony, her statements made during jail calls relating to her vision and balance, and photographs of the her swollen neck.

- The complainant stated during jail calls that appellant was trying to kill her, and if she hit appellant it was in defense because he was choking her.

- The complainant's son testified about the time he spent in the car waiting for the complainant to return, and his entry into the home. His account was consistent with the  timeframe of the strangulation and his interruption of the strangulation. The complainant's son testified that when he walked into the room appellant was hovering over his mother.

Additionally, the victim service counselor (Jeannie Tomanetz) explained that

13

it was common for victims of strangulation not to remember things, which could have provided the jury some basis for reconciling the complainant's inability to remember anything appellant said to her or anything the officer said to her.

During closing argument, the primary factual dispute related to whether appellant strangled the complainant, assaulted the complainant without strangling, or acted in self-defense. Though the State referred to the complainant's hearsay at times, the State also referred to other evidence to relate the same facts presented to the jury. For example, the State referred to the jail call, in which the complainant recounted that during the incident appellant was "choking" her. Even without the presumed hearsay statements from the complainant, the jury had ample evidence to conclude that appellant strangled the complainant. We find reasonable assurance any error in admitting the hearsay did not influence the jury's verdict or had but a slight effect.

After examining the record as a whole, we conclude that any error in the trial court's admission of Officer Knodel's testimony of the complainant's answers during the hospital interview did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Rivera-Reyes v. State*, 252 S.W.3d 781, 788 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (finding improper admission of hearsay statement harmless when other evidence that did not draw an objection proved the same thing); *Diamond v. State*, 496 S.W.3d 124, 142–43 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd) (holding admission of hearsay testimony harmless error where the testimony was cumulative of other evidence in the record); *Wilkinson v. State*, 523 S.W.3d 818, 825–26 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd)(finding harmless any error in the admission of emergency medical services report narrative containing domestic assault victim's statement where most of the details provided in the report were admitted without

14

objection through other testimony).  We therefore overrule appellant's third issue.

### III. CONCLUSION

We modify the judgment to add a statement that the trial court enhanced appellant's punishment based on a prior third-degree felony conviction and used the range of punishment for a first-degree felony.  We affirm the judgment as modified.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Spain and Poissant.

Publish — TEX. R. APP. P. 47.2(b).